No. 2709.—SUCCESSION OF H. F. McKENNA.

23b 369
51 1041

*If the appeal be granted on motion and the bond be given in favor of the clerk, all persons having an interest are by law parties to the appeal. If, therefore, the executor has a right to appeal in any capacity, the appeal taken by him will not be dismissed on motion of the legatees, who have not appealed, on the ground that the executor had no right to take an appeal for them.*

*An executor who is directed to administer the estate in conformity to the dispositions of the will, has an appealable interest from a judgment recognizing the rights of the survivor in community. The appeal taken by the executor from such judgment will not, therefore, be dismissed for want of appealable interest.*

*If a man who is domiciled and has his residence in Louisiana, marries a woman in a foreign country, without changing his residence or domicile, but continues to reside here, the property acquired subsequently to and during the marriage becomes community property, although the wife has never resided in the State, because the domicile of the wife is that of the husband.*

APPEAL from the Second District Court, parish of Orleans. *Duvig-neaud,* J. *Simeon Belden,* Attorney General, and *Thomas Hunton,* for appellants. *J. Ad. Rozier* and *Lea, Finney & Miller,* for appellees.

HOWELL, J. The motion to dismiss is based on the grounds:

*First*—That the executor is without authority to prosecute this appeal on behalf of or for the benefit of the legatees, who have not appealed and have not been made parties as appellants.

*Second*—The executor is without interest in the matters in controversy to authorize an appeal by him.

47

*Third*—The legatees have not made themselves parties to the mortuary proceedings in the lower court, and the proceedings had by the executor are unauthorized.

I. As to the first ground, it need only be said that the appeal having been granted on motion, and the bond being in favor of the clerk, all persons having an interest are by law parties to the appeal, and it is immaterial whether the legatees are appellees or appellants if the executor has a right of appeal in any capacity.

II. The appeal·is taken from a judgment sustaining, in part, certain oppositions to the account filed by the executor, and by which one-half of the funds in his hands were assigned to the widow in community, and thus, as contended by the executor, taking away a large portion of the succession and rendering him unable to carry out the provisions of the will, which is the law governing his official action, and which it is his duty to execute.

This discloses an appealable interest. The funds in the hands of the executor are the proceeds of property inventoried as all belonging to the succession of the deceased, and sold, as shown by the record, to satisfy a judgment obtained by a trustee in behalf of the widow and pay the legacies made in the will, and it seems to be clearly the duty of the executor to account for the whole succession coming into his control, and to prevent any part of it from being diverted or appropriated in a way different from that provided or ordered by the will; and this whether the parties who may eventually be affected by such diversion complain or not, for the executor represents the deceased, and is under an official responsibility to see that the bequests and directions of the will are properly and faithfully carried out. His interest in executing the will is different from the interest or obligation of a syndic or administrator in the matter of distributing funds among creditors. The one derives his office and trust from the testator, and the other from the law.

In this case it appears that the succession has been open and under the administration of an executor since April, 1864, and it is only in the opposition to this account in August, 1869, that the widow has asserted any rights to the community, and if the executor considered the judgment recognizing those rights erroneous, it was his duty to have it revised. This claim is not set up as distributer under the will, but one alleged to grow out of the law of this State regulating the community between husband and wife, and which may result in materially affecting the dispositions made by the executor.

The cases cited by appellees are where administrators or syndics were considered mere stakeholders, having no interest in the fund, apart from their commissions, except to pay it to those to whom, upon being called together, they were ordered by the court to pay; while

in this case the executor is ordered by the testator to dispose of all his estate in certain fixed sums to certain named legatees, and the claim preferred by the widow, he contends, will take out of his possession one-half of that estate. His appealable interest under such circumstances is manifest, and as real as that of a State or city treasurer in seeing that payments which they are ordered to make are correct

We think the interest and duty of the executor in the matter are plain.

III. The application of the third ground is not perceived as a reason for dismissing the appeal. The filing of an account did not depend on the legatees making themselves parties to the mortuary proceedings. The law makes it the duty of executors to render annual accounts of their administration. C. C. 1674 [1666].

The motion is refused.

## On Oppositions to Account of Executor

HOWELL, J. The executor's account shows a cash fund on hand of $83,781 03, out of which he proposes to pay privileged debts against the succession, consisting of executor's commissions, attorney's fees and sheriff's and clerk's costs, amounting to $4702 02, and a judgment of the United States Circuit Court in favor of E. McSwiney, trustee of Mrs. McKenna, which, with interest and costs to date of filing, is stated to amount to $71,669 63, leaving a balance of only $7409 38 to be distributed *pro rata* among the particular legatees, thirteen in number, whose legacies amount to $75,000.

To this account oppositions were filed by Mrs. McKenna, claiming one-half of the funds in hand as widow in community, asserting that the judgment in favor of her trustee must be paid out of the funds belonging to the succession, that is, the portion of the husband and not the community, and objecting to the items of executor's commissions and payment of the particular legacies; also by McSwiney claiming interest as allowed by his judgment up to date of payment, and by the State of Louisiana claiming ten per cent. on all the legacies made by the deceased to persons not citizens of the United States and domiciled in this State at the date of his death.

The opposition of Mrs. McKenna, as widow in community, seeking to restrict the payment of the judgment of the United States Circuit Court to the portion of the funds belonging to the succession, was sustained, and in other respects dismissed; that of McSwiney was sustained, and that of the State as to a particular legacy of $25,000 to the widow was dismissed; and as to other legacies, there being no funds, the right of the State was reserved. From this judgment the executor and the State appealed.

The executor presents four propositions for our consideration:

*First*—That Mrs. McKenna is bound by her unqualified receipt of the legacy of $25,000 (less ten per cent.), on the nineteenth March, 1867, to observe and abide by the consideration imposed by the testator, to wit: "that she gives a full acquittance against any other claim on his estate."

To this the reply is that by a codicil to the will, duly probated, the testator distinctly dispensed with or removed this condition.

*Second*—That Mrs. McKenna was not a partner in community, and if she were she is not entitled to participate in the large amount realized from the sale of property in Missouri, because that property was not acquired in Louisiana, was not acquired since 1852, and was not acquired by "non-resident married persons."

It appears that Hugh F. McKenna, a merchant of New Orleans, was married in England in October, 1844, and retained his domicile here until the date of his death in February, 1864; that his wife never came to this country during his life, but resided in Europe; that in 1861, being in bad health, he left for England, and notified his wife, then in Belgium, to meet him in London, which she did; that they thereafter remained together, traveling in different parts of Europe, and that he died in London without forced heirs, having made the codicil to his will, above referred to, in August, 1861, after meeting his wife in that city.

We think it clear that under this state of facts, according to our law, the domicile of the wife was that of the husband, in New Orleans, and that a community of acquêts and gains existed between them, and that it is unnecessary to inquire into the motives or causes of the wife's continuing in Europe after the marriage.

Under the circumstances, we can readily presume that the husband consented for his wife to remain in Europe. In the will made by him before leaving here in 1861, he provided for her, giving her, besides the above legacy of $25,000, four-tenths of the residue of his estate. Louisiana being the place of his domicile, and necessarily hers, at and subsequent to the marriage, the law of this State regulated the marital rights, and there being no separation of property between them, all the property acquired by them, or either of them, after marriage fell into and belonged to the community, unless shown to have been the separate property of one or the other. C. C. 39, 2332, 2334, 2402.

As to the property alleged to be in Missouri, it appears from the tableau to have been *stock* in a sugar refinery in that State held by the deceased. From this description we can only infer that the stock was an incorporeal, not having the character of an immovable by nature, or by the disposition of the law, and must be considered a movable. C. C. 471, 475.

*Third*—That the judgment of the United States Circuit Court was based on a contract absolutely null and prescribed, and the rights of all parties in interest are reserved by the Second District Court, parish of Orleans, with reference thereto.

This judgment is in evidence, is against the executor, and must in this proceeding have the force of *res judicata*. We are without authority to revise it.

*Fourth*—That if said judgment is valid, still Mrs. McKenna, for whose use it was obtained, has no right to claim interest thereon, and also one-half of the estate. In other words, she could not suffer the amount agreed to be paid by McKenna by the marriage contract to remain in his hands, and be used by him in accumulating an estate, and then claim interest on the amount and one-half of the accumulalations also. This would be to receive interest twice.

The judgment appealed from allows interest as awarded by the judgment of the United States Circuit Court from twenty-fourth January, 1864. It is a part of said last judgment, and binding on the executor.

Upon the appeal by the State we are not favored with a brief or argument by the Attorney General, and as we have allowed Mrs. McKenna her claim upon the fact of her domicile being in Louisiana, it seems a consequence that the ten per cent. tax can not be required of her because of having her domicile in Europe. She can not be considered a resident of Louisiana for the purpose of acquiring, and a resident of Europe for paying a per centage on her acquisition. We see no reason for disturbing the judgment.

Judgment affirmed