This case has been before us on appeal. See 12 So.2d 71. That appeal was taken by plaintiff from a judgment sustaining an exception of no cause or right of action filed by the defendants. In that opinion, the allegations of plaintiffs petition are stated, and we see no reasons to re-state them. We reversed the judgment of the lower court and overruled the exception of defendants and remanded the case for further proceedings.
On November 18, 1940, Tony Marino, defendant, filed answer, with reservation of all exceptions urged and overruled, and in which answer he practically admitted the essential allegations of plaintiff's petition, but denied the conclusions of law. In further answer, he interposed pleas of res adjudicata and estoppel, based principally on the ground that the plaintiff did not claim any interest in the property in the divorce proceedings instituted by her husband against her, and therefore her claim for any interest is now "a thing adjudged". Furthermore, defendant avers, that by failing to point out the property in question as community property, by the payment of rent for several months to defendant, and by removing and surrendering the property at his request, the plaintiff became estopped from claiming any interest in the property. He further alleges that he purchased the property from plaintiffs husband without any knowledge of the declaration of homestead and was only informed of such declaration by the filing of the suit.
On April 23, 1941, defendant Marino filed a supplemental answer in which he avers that the plaintiff is further estopped to claim any interest in the property in question for the reason that in the partition had between her husband and herself she had accepted certain properties in full settlement of her community estate, and further that plaintiff, after the decree of divorce, had sold to him an abstract of title to the property for $10.00. In further answer, in the alternative, he avers that he is entitled to recover from the community which formerly existed between plaintiff's husband and herself the sum of $1,125.00, made up of such sums as (1) $350.00, the original purchase price; (2) $150.00, city, parish and state taxes; (3) $25,00, insurance premiums paid on the property; (4) $150.00, for repairs on the improvements; (5) $300.00 for loss incurred in the surrender of the property; and (6) $150.00 as attorneys' fees incurred in defending the suit. In the further alternative, he calls in warranty William Mack Smith, his vendor, against whom he seeks a judgment for the amount of $1,125.00.
On May 12, 1941, plaintiff filed a supplemental petition making Sherman Dieson and his wife, Nettie Dieson, parties defendant, to which the defendants filed an exception of no cause or right of action, which exception of no cause or right of action was sustained, hence the appeal and our opinion supra.
Thereafter, defendants Sherman and Nettie Dieson answered and adopted the answer of Tony Marino, their vendor, represented by the attorney of record of Tony Marino, and calling defendant Tony Marino as warrantor in damages.
On June 2, 1943, all of the defendants, Tony Marino, Sherman Dieson and Nettie Dieson, filed a supplemental answer, in which they pleaded the unconstitutionality of Section 4 of Act 35 of 1921, Ex.Sess., as being in contravention of Article XI of Paragraph 1 of the Constitution of 1921, as amended by Act 42 of 1938.
Under these issues, the trial judge, with written reasons assigned, gave judgment in favor of plaintiff and against defendants, recognizing her to be the owner of an undivided one-half interest in and to Lot Two (2), Block "Q", Plat No. 3, D.J. Reid Subdivision of the City of Lake Charles, Louisiana, with improvements thereon; further decreeing that an accounting be made of all revenues produced by the said property since plaintiff was deprived of her residence therein, subject to rights of defendant to credit for all taxes paid on said property, and all repairs and improvements placed thereon, said credit to be for one-half of the amount expended on the whole property; and further awarding the plaintiff a fair rental for the use of her one-half interest in said property from the time she was forced to vacate the same, and she to *Page 782 
recover one-half the rentals paid by her to Tony Marino; the accounting to be made within a reasonable time. The defendants have appealed. The plaintiff has answered the appeal praying that the judgment be affirmed in so far as it decrees her to be the owner of an undivided half interest in the property involved, but that it be amended so as to give her a money judgment under the evidence in the record.
After a careful review of the record, we find the following facts to be well established: During the marriage of William Mack Smith and plaintiff, the property in contest was acquired by deed dated September 14, 1928, duly recorded in the conveyance records for the Parish of Calcasieu, from Julia DeVaughan, thus falling into the community then existing between plaintiff and her husband. On July 15, 1935, while plaintiff and her husband were occupying the property as their home, plaintiff executed and filed for record a notarial declaration and designation of this property as a homestead under and by virtue of the provisions of Act 35 of 1921, which notarial declaration and designation was duly recorded in the Conveyance Records of the Parish of Calcasieu. It appears that shortly thereafter, on or about September 10, 1935, plaintiff and her husband became separated, plaintiff continuing to reside on the property while her husband moved away from the property. While thus living separate and apart from each other, plaintiffs husband, on May 9, 1938, executed a general warranty deed purporting to sell this property to defendant Marino, for a purported cash consideration of $350.00.
Defendant Marino, on or about the date of his purported purchase, notified the plaintiff that she would have to pay him rent thereafter at the rental of $12.00 per month if she desired to continue to occupy the premises, which rental plaintiff paid up to and until the latter part of August, 1938, at which time she became delinquent and eviction proceedings were instituted against her. Plaintiff maintains that she, in the very beginning, informed the defendant Marino that she had had recorded a homestead declaration and could not see wherein her husband could sell the property without her signature, and upon the insistence of Marino, being without means to contest the same, she involuntarily paid him rent.
It further appears that on August 25, 1938, at the time or before the eviction proceedings were taken, defendant Marino attempted to convey, under a contract of sale, the property to Sherman and Nettie Dieson, the other two defendants in this case. Due to the eviction proceedings, the plaintiff involuntarily surrendered the property to these defendants.
On September 20, 1938, plaintiff's husband filed suit against plaintiff for an absolute divorce, under Act 430 of 1938, based on the ground that he and his wife had been living separate and apart for more than two years. In that suit, plaintiff's husband alleged that there was no real or personal property belonging to the community of acquets and gains between himself and his wife. In answer to the suit, plaintiff admitted that she and her husband had been living separate and apart from each other for more than two years, but denied that there was no real or personal property belonging to the community of acquets and gains between her husband and herself. In her answer, she prayed for an inventory and appraisement of all the property belonging to the community. However, no inventory of the community property was taken. On November 21, 1938, a judgment of divorce was granted. In the judgment of divorce, it is ordered that a partition be made of the real and personal property belonging to the community of acquets and gains in the proportion of one-half interest to each in a vacant lot in Lake Charles, and in a Ford automobile, after an outstanding chattel mortgage thereon is paid. Plaintiff was to get all the furniture, except a picture of her husband and a chifferobe, which were to be turned over to her husband. We are not furnished with a copy of the Act of Partition, if any was executed, as provided for by the judgment of divorce.
[1, 2] Under these facts we cannot see wherein the plaintiff has abandoned her claim of a homestead declaration. An abandonment of such declaration of homestead cannot be presumed, but must be *Page 783 
clearly established by the party alleging it to a certainty. The defendants have not made such a showing.
[3] As to their contention that plaintiff is now estopped from now claiming an interest in the property, we see no merits therein. She did not mislead defendant Marino, nor the other defendants, Diesons, in the purchase of the property. Nowhere in the record is there testimony that prior to their purchase they, or either of them consulted or talked to plaintiff as to the status of the property. Furthermore, the declaration of homestead was of record, and it was incumbent upon these defendants to see if any incumbrances against the property were of record. The recordation of the declaration of homestead was notice to them of such. They cannot now plead their innocence of such and they are purchasers in legal bad faith.
[4, 5] In so far as being estopped by her pleadings and actions in the divorce proceedings, we cannot see wherein she has done or caused anything therein to warrant such a holding. These proceedings were done and had subsequent to the purported sale to Marino and from Marino to defendants Diesons. She particularly denied the alleged non-existence of real property belonging to the community. Furthermore, this property no longer existed as community. Her cause of action to recover her undivided interest into this property only came into existence when the decree of divorce was granted. This suit is really in the nature of a suit to set aside a sale, in so far as her interest is concerned, by the wife as a fraud to deprive her of her half interest in the property.
[6] As to defendants' contention that Act 35 of 1921, Ex.Sess., violates Section 1 of Article XI of the Constitution, we cannot see wherein this Act is in derogation of said Constitutional Article. Section 1 of Article XI of the Constitution deals with certain rights and exemptions of certain debtors with respect to their creditors, while Act 35 of 1921, Ex.Sess., simply accords certain rights between husband and wife.
[7] Defendants were in legal bad faith, at least, since the notarial declaration of homestead was of record long prior to their purchase and they are charged with having had notice of its recordation. See Dohan's Heirs v. Murdock, 41 La. Ann. 494, 6 So. 131; Civil Code Articles 503 and 3451. These defendants then are liable for the rents and revenues of the property with deductions, as offset, against the rents and revenues as they may have been proved, such as the materials and labor in the re-roofing of the porch, the preservation of the property and taxes paid. The defendants are liable for the rents and revenues of the property from the date plaintiff was evicted from the property, that is, August 25, 1938, until possession is restored to her or a partition, either by licitation or in kind, is had between the parties. It is certain that the property had a rental value of $12.00 per month, or $6.00 per month for plaintiff's undivided half until the decree becomes final. As against this, the defendants would be entitled to one-half of the following items: $161.54, roofing material; $30.00, front porch; $4.00, paint; $16.00, screening; $9.00, shingles; totalling $221.54, or the sum of $110.77, plus whatever State, Parish and City taxes and insurance premium that were paid by these defendants, or to use the tabulation given by defendants annexed to their brief, the sum would be one-half of $273.58, or $136.79.
For these reasons assigned it is ordered that that part of the judgment which decrees plaintiff to be the true and lawful owner of an undivided one-half interest in and to: Lot Two (2), Block "Q", Plat No. 3, D.J. Reid Subdivision of the City of Lake Charles, Louisiana, with the improvements thereon is hereby affirmed.
It is further ordered that the remainder of said judgment be annulled, reversed and set aside, and it is now ordered that there be further judgment in favor of plaintiff and against the defendants, Tony Marino, Sherman Dieson and Nettie Dieson, in so-lido, in the sum of Six dollars monthly from August 25, 1938, until possession is restored to plaintiff, or a partition, either by licitation or in kind, is had between the co-proprietors, subject to a credit or offset in the sum of $136.79, plus whatever State. Parish or City taxes and insurance premiums *Page 784 
defendants may have paid since the trial of the case.
It is further ordered that there be further judgment in favor of plaintiff and against Tony Marino in the sum of $24.00, being one-half of $48.00 paid by plaintiff to said Marino for four months' rent.
It is further ordered that defendants pay all costs.