## No. 10,311.

### HEIRS OF DOHAN vs. ROBERT MURDOCK.

An evicted vendee of property under a defective title, the nullity of which is apparent from an inspection of the title itself, will not be considered as a possessor in good faith, so as to be released from accounting for rents and revenues during his possession.

Under the laws of Louisiana the essential conditions of good faith in a possessor under a defective title are that he was ignorant of the defects which vitiated his title, and that he had just reason to believe that he was acquiring a good title.

Hence those defects must have reference to some hidden or concealed facts, and not to ignorance of the law under which the title was a nullity.

No one can plead ignorance of the law in questions of ownership.

APPEAL from the Ninth District Court, Parish of Tensas. *Young*, J.

*Montgomery & Randell* for Plaintiffs and Appellants.

*Percy Roberts, Steele & Dagg* and *Reeves & Snyder* for Defendant and Appellee.

The opinion of the Court was delivered by

POCHÉ, J. This is a petitory action, by which plaintiffs claim the ownership of one undivided half of a plantation, by right of inheritance from their mother, and also rents and revenues for the same from the year 1878, inclusively.

The case was before us last year, and it was remanded for the purpose of taking evidence, as to the alleged residence, in the State of Mississippi, of Daniel J. Dohan and wife, the father and mother of some of the plaintiffs, in the year 1850, at the time of their purchase of the plantation of which the property in suit formed a part. 40 Ann. 376.

Plaintiffs rest their title on the fact that the plantation was purchased by D. J. Dohan and wife, jointly, while they were residents of Missis-

sippi, before the passage of the Act of 1852, now Article 2400 of our Code, under the provisions of which, all property acquired in this State by non-resident married persons, shall be subject to the same provisions of law which regulate the community of acquets and gains between citizens of this State. Hence they contend that Dohan having previously alienated the other half of said property, the remaining half was owned by his wife, as the entire plantation did not fall in the community, for the reason that there was no community between the spouses at the date of their purchase.

Defendant held the property in dispute under a title to him from D. J. Dohan, executed in July, 1878.

But in amended pleadings filed since the cause was remanded, he formally conceded the defects of his title, and recognized that of plaintiffs; and pleading the good faith of his possession, he claimed the reimbursement of all moneys expended for taxes and for improvements made by him on the property during his posssssion, and to be entitled to rents and revenues.

Under those issues the case was tried before a jury who found in favor of plaintiffs on the question of title, and on the question of rents, since the institution of the suit, in 1885, for which they allowed $600; and they allowed credit to the defendant for taxes and improvements to the amount of $2379 58, striking a balance in his favor of $1779 58. Plaintiffs appeal and defendant prays for an increase of the moneyed judgment in his favor to $5000.

On appeal the issue is restricted to the defendant's alleged good faith in his purchase and subsequent possession.

His contention is that he had just reasons to believe that, in his purchase from Dohan, he was acquiring a good title, by virtue of an act translative of property, from one whom he then believed to have been the true owner; and that he has only discovered the defects of his title since the institution of this suit, and, in fact, only since the previous trial of the cause.

He further contends, and the record shows, that previous to his purchase, he had his vendor's title examined by able and eminent counsel who had reported that the title was perfect. C. C. Articles 503, 3451.

But the record shows that the defect of Dohan's title to the property in suit was apparent, and could be ascertained by an inspection of the act under which he claimed ownership.

On its face, and in clear and unambiguous terms, the act purported to be a sale to "Daniel J. Dohan and Rebecca Dohan, his wife, of the County of Claiborne and State of Mississippi. Hence it was clear

from the act that its legal effect was to make the husband and his wife joint owners of the property, which even under own laws then existing, did not become the property of a conjugal partnership or community.

It is only by operation of Act No. 292 of 1852 that property acquired in this State, by non-resident married persons, whether the title thereto be in the name of either the husband or wife, or in their joint names, became subject to the same provisions of law which regulate the community of acquets and gains between citizens of this State.

Previous to that legislation, the only law on the subject was contained in Article 2369 (now 2399), which provides that : " Every marriage contracted in this State, superinduces of right partnership or community of acquets and gains, if there be no stipulation to the contrary;" and in Article 2370 (now 2401), which reads : "A marriage contracted out of this State, between persons who afterwards come here to live, is also subjected to community of acquets, with respect to such property as is acquired *after their arrival.*" (Italics are ours.)

The conjugal partnership thus provided for is exclusively a creature of the civil law, and can result only from express legislative will ; hence it could exist only under circumstances especially provided for. Now it is quite clear that the circumstances surrounding the purchase by Dohan and wife were not covered by, or included in, either of the two articles just quoted. At the date of the purchase they were not residents or citizens of this State, and therefore the *status* of their ownership could not be subjected to our laws which then regulated the community of acquets and gains between citizens of this State. Hence it follows that they became joint owners, for one undivided half each, of the property now in suit; and that the portion which had accrued to Dohan, having been previously alienated by him, the remaining undivided half was the separate property of his wife, at the time that he executed a sale thereof to the Defendant Murdock.

In judicially admitting the ownership of plaintiffs, by right of inheritance from Rebecca Dohan, their mother, defendant practically but unequivocally admits the correctness of the foregoing considerations. And as they flow from a simple application of the law to the condition of things apparent on the face of the titles held by Dohan and wife, it follows that the error which defendant sets up as the foundation of his good faith was not an error of fact, but manifestly and exclusively an error of law. It was doubtless an honest error, and one in which his counsel very naturally fell, under the law as it existed at the time (in November, 1877) that he made the examination of Dohan's title ; and

he very naturally omitted to investigate the *status* of our legislation in 1850, as it stood at the time that the Dohans purchased, but it was nevertheless a palpable error.

Now, under our jurisprudence, the principle is well settled that such an error is incompatible with good faith as characterizing the possession of an evicted vendee of immovable property.

The essential conditions of good faith which our law contemplates in the purchaser of property under a defective title are that he had just reason to believe that he would possess the property as master, and that he was ignorant of the defects of the title which he was acquiring.

In applying the plain and unambiguous terms of our law to the state of facts which were disclosed by the act of sale to Dohan and wife, and which were of record, the defendant was warned of the fact that Dohan was not, and has never been, the owner of the entire tract of land purchased by him and his wife jointly while they were not residents of this State; and acts, likewise of record, also informed him of the fact that Dohan had previously alienated his undivided half of the property in question.

The defects of the title were therefore not hidden defects, depending upon the acts, or within the exclusive knowledge, of his vendor or of other persons over whom he had no control; but the defects were within the grasp of his own mind, and the nondiscovery of which, at the time, simply involved him in an error of the law which governed in the premises.

Article 503 of the Code, on which he relies, says: The vendee "ceases to be a *bona fide* possessor from the moment that these *defects are made known to him* (italics are ours) or are declared to him by a suit instituted for the recovery of the thing by the owner."

Manifestly the defects contemplated by the law are not defects flowing from a misapprehension of the law, either by the vendor as to the title which he tenders, or by the vendee in accepting the same. No one is supposed to be ignorant of the law. They must, in the very nature of things, be defects which involve a misrepresented, or a misunderstood, state of facts, which are erroneously believed to exist, or not to exist, as the case may be.

In Françoise vs. Delaronde, 8 Martin, 619, this court said:

"However much the commentators of the Roman law have differed the one from the other, and the same person from himself at different periods, on the subject of mistakes of law, they seem to agree in this, that *juris error* is never a good foundation for acquiring property." See also Donaldson vs. Hull, 7 New Series 112; Lowry vs. Erwin, 6 Rob. 192;

Brashear vs. Dwight, 10 Ann. 646 ; Bennett vs. Bennett, 12 Ann..253 ;
Walworth vs. Stevenson, 24 Ann. 251.

In the case of Brashear vs. Dwight, the court treated the question of
error of law in the following language : " The only question to be de-
termined is, whether the defendant was such a possessor in good faith,
as released him from the obligation to account for the fruits and reve-
nues received by him. We have given this point a careful considera-
tion, and are of the opinion that where the nullity which vitiates the
title to the purchaser is apparent from the inspection of the title itself,
he must be considered a purchaser with notice, and cannot, therefore,
shield himself under the provisions of Article 495 (now 503) of the Civil
Code."

We .therefore conclude that, although fully impressed with the con-
viction that the defendant was morally in good faith, we must hold that
he does not come up to the requirements of good faith according to law.
Hence he must be held accountable for rents and revenues during the
ten years of his possession. The jury have fixed the rents at $200 per
annum, and our examination of the record on that point does not justify
us to disturb their finding.

In brief, plaintiffs' counsel concedes the right of the defendant to be
reimbursed the amounts which he has expended for taxes, and for the
improvement and for the preservation of the property during his posses-
sion.

In that branch of the case, the jury fixed the amount due to de-
fendant at $2379 58, and we find that their conclusion is supported by
the preponderance of the evidence.

In accordance with the foregoing views the account between the
parties will therefore stand thus :

Amount allowed to defendant for taxes and improvements on
    the property....................................................$2,379 58
Amounts due by him for rents and revenues................. 2,000 00

    Balance in his favor.................................. $379 58

It is therefore ordered that the judgment appealed from be amended
in the following particulars : 1. By decreeing, and it is now adjudged,
that the defendant was not a possessor in good faith, and that he be held
liable for rents and revenues during the whole time of his possession,
for which he is held in the sum of $2000 00.

2. By reducing the balance in favor of said defendant, as the excess
of his claim for taxes and improvement due by him for rents and reve-
nues from $1779 58 to $379 58 ;

And it is ordered that, as thus amended, said judgment be affirmed, at the cost of defendant and appellee, in this court.

### ON APPLICATION FOR REHEARING.

POCHÉ, J. Now, and for the first time, counsel for the defendant make the point, that, as the deed which he obtained from Dohan was translative of title, and showed no defects on the face, the purchaser was not compelled in law, under the rules of good faith, to look further, and to examine the deed which Dohan had acquired from his vendor, in which alone the defects which have vitiated his title were apparent.

And they quote numerous authorities which go to support the doctrine which they contend for in an elaborate and very able brief.

But the principle has no application to the facts in the record which have no direct bearing on the question of defendant's alleged good faith in his purchase.

As stated in our previous opinion, the Code provides that the vendee " ceases to be a *bona fide* possessor from the moment that the defects are made known to him." * * * Conceding, therefore, that in this case defendant's good faith cannot be affected by defects not apparent on the face of the deed which his vendor tendered him, and that he was not held to a further examination, the question recurs as to whether he did not acquire actual knowledge of the facts which vitiate the title which he thus acquired, either by an actual examination of his vendor's title-deed or in some other mode.

And in this record it is clearly proven that such an examination was actually made, and that the error under which defendant and the attorney who examined the titles labored was one of law and not of fact, and hence we correctly held that it was no shield to him in support of his alleged good faith.

The written opinion of the attorney, which is in the record, recites the very title-deed which showed the defects.

And in his answer to plaintiffs' first petition in this suit, defendant specially refers to the sale of Harris to Dohan and wife, of date February 21st, 1850, as one of the munuments of his title, with detailed reference to the deed book in which it can be found.

And yet in his amended answer, filed nearly three years later, and subsequent to the first appeal which came up to this court, he claims to have but recently discovered the admitted defects of his title.

But in that answer he says:

"Defendant admits that, at the time D. J. Dohan and wife acquired the property now in controversy, they were residents of the State of

Mississippi, and that said purchase was made a short time prior to the Act of 1852, making property acquired by non-resident married persons subject to the same provisions, as to the community of acquets and gains as existed between citizens of this State. * * * Defendant renews the allegations of his original answer herein and still avers that he is a possessor in good faith, that at the time of his purchase from said Dohan, and long prior thereto, the said Dohan had been and was a resident of this parish of Tensas, and this defendant believed, and was advised, that the property in controversy was the community property, and he was not aware of any exception to the general rule which would deprive said Dohan as head and master of the community, of the authority to sell this property and convey perfect title thereto."

This quotation describes better than we could, the nature of the error under which defendant labored until the last trial of this suit.

It actually breathes the honest confession that it was simply an error of law, and of itself it fully warrants our previous conclusions on this point.

It therefore follows that we had committed no error, and that our decree must remain undisturbed.

Rehearing refused.