HEIRS OF SIMON SHEFFTZ ET AL., Plaintiffs and Appellants, v. SECRETARY OF THE TREASURY OF PUERTO RICO, Defendant and Appellee.

No. AP-65-50. Decided January 30, 1967.

*Basilio Santiago Romero* for appellants. *J. B. Fernández Badillo,
Solicitor General,* and *Elpidio Arcaya, Assistant Solicitor
General,* for appellee.

First Division composed of Mr. Justice Pérez Pimentel, as Chief Judge of Division, Mr. Justice Blanco Lugo, Mr. Justice Rigau, and Mr. Justice Ramírez Bages.

MR. JUSTICE PÉREZ PIMENTEL delivered the opinion of the Court.

There is no controversy as to the facts of this case.

Simon Shefftz, a citizen of the United States of America, resident and domiciled in the state of Massachusetts, died on October 20, 1960. At the time of his death he was married to Jean Shefftz, whom he had married on July 1, 1928 in the state of Massachusetts. Shefftz left as his heirs, his widow Jean Shefftz and his children Melvin Charles and Barbara Shefftz, all residents in the state of Massachusetts at the time of the death of Shefftz.

In a will executed on October 10, 1958 in the state of Massachusetts, Simon Shefftz stated, among other things, that upon his death half of his estate should pass to his wife Jean Shefftz, as "marital deduction" in the form of a trust. This testamentary provision was made by the deceased Mr. Shefftz, by virtue of the right which was and is still granted by the Federal Internal Revenue Code and under the tax laws of the state of Massachusetts.

At the time of his death Shefftz was the owner and had in his possession a certain number of shares of two Puerto Rican corporations. These shares were declared in the notice of death filed in the Inheritance Division of the Department of the Treasury. In said notice of death the heirs took as deduction the 50% of the assets left by the deceased in Puerto Rico, adducing that half the value of the shares constitutes community property of the widow.

The Secretary of the Treasury assessed said shares for the purpose of taxing their transfer at $146,767.50. There is no controversy as to this assessment. However, the Secretary of the Treasury considered the total value of the shares as property transferred subject to the payment of inheritance

tax, thus disallowing the deduction of 50% of the value of the shares claimed as marital deduction by Shefftz's heirs. The tax notified amounted to $25,461.07 but the heirs only paid $7,948.29 and resorted to court to litigate the difference.[1]

After a hearing, during which the parties did not offer any evidence, limiting themselves to raise questions of law, the Superior Court rendered judgment dismissing the complaint and, consequently, sustaining the determinations of the Secretary of the Treasury.

The heirs of Shefftz appealed from the judgment, assigning the commission of the following:

### ERRORS

"I The judgment rendered by the Superior Court, San Juan Part, is erroneous at law because the trial court failed to conclude that the shares subject to the inheritance tax in Puerto Rico constitute community property of Shefftz and his wife, pursuant to § 1295 of our Civil Code, 1930 (31 L.P.R.A. § 3621).

II The judgment rendered by the Superior Court is evidently erroneous because it favors and supports a tax discrimination against the citizens of the United States residents in the states of the Union where the system of separate property governs and in favor of the residents of Puerto Rico and the residents of the states of the Union where the community property system

---

[1] The final notice served to the heirs of Simon Shefftz amounted to $25,461.07, according to the following breakdown:

| | |
|---|---|
| Jean Shefftz (wife) | $15,215.13 |
| Melvin Charles Shefftz | 5,122.97 |
| Barbara Shefftz | 5,122.97 |
| Total | $25,461.07 |

The heirs only paid the amount of $7,948.29 in the following proportion:

| | |
|---|---|
| Jean Shefftz (wife) | $ 431.77 |
| Melvin Charles Shefftz | 3,758.26 |
| Barbara Shefftz | 3,758.26 |
| Total payment | $7,948.29 |

governs. Said discrimination is prohibited by § 2 of the Puerto Rican Federal Relations Act (L.P.R.A., Vol. 1, p. 181), since it is a violation of the rights, privileges, and immunities of the citizens of the United States.

III The judgment of the Superior Court, San Juan Part, is erroneous at law because it favors a tax discrimination against plaintiffs, which constitutes a manifest violation of plaintiffs' constitutional rights, pursuant to the provisions of Article XIV of the Constitution of the United States, as well of the Constitution of the Commonwealth of Puerto Rico, which prohibits that any State shall deprive any person of his property without due process of law. The violation of the aforementioned constitutional clause consists in imposing an improper inheritance tax on a vested right (the right of the widow to one-half of the estate), which is tax exempt pursuant to the Massachusetts law as well as the federal law itself."

▆▆▆ Appellants do not base their claimed right to a deduction of one-half of the value of the shares on the marital deduction recognized to taxpayers by the Federal Internal Revenue Code as well as by the Massachusetts law.[2] They could not do it. Our Inheritance and Gift Act does not recognize the marital deduction and in the matter of deductions, for the purpose of levying a transfer tax, the applicable

---

[2] The marital deduction—as correctly stated by the Solicitor General—is simply a legislative grace. It is what the expression itself indicates: a deduction against the hereditary estate. It represents a legacy in favor of the surviving spouse permitted by Congress, which is tax exempt, subject, however, to the condition that the same does not exceed 50% of the testator's estate. Being a deduction, it has its restrictions, exceptions, requirements, and limitations to such an extent that the latter may considerably reduce the exemption that the statute contemplates. *Jackson* v. *United States*, 376 U.S. 503 (1964); *United States* v. *Stapf*, 375 U.S. 118 (1963); *Hoffman et al.* v. *McGinnes*, 277 F.2d 598 (1960); *First National Exchange Bank of Roanoke* v. *United States*, 217 F.Supp. 604 (1963); 90 A.L.R.2d 405.

"Marital deduction permits deceased spouse, *subject to certain requirements, to transfer free of taxes one half of his non-community property* to his surviving spouse." (Italics ours.) *U.S.* v. *Stapf*, 375 U.S. 118 (1963).

provisions are those of the aforesaid Act.[3] Their contention is to the effect that said shares are community property and, consequently, one-half of their value corresponds to the widow in her own right and is not subject to inheritance tax. Appellants argue that pursuant to § 1295 of our Civil Code, the juridical context of which has been construed by the Supreme Court of the State of Louisiana in the case of *Succession of Dill*, 155 La. 47, 98 So. 752, any property acquired in civil jurisdiction subject to community laws shall be considered community property, regardless of where both or either of them reside and the property laws in the place of marriage.

The *Succession of Dill* case was decided under a Louisiana statute different from ours. However, it cited the case of *Saul v. His creditors* (16 Am. Dec. 212), where it was decided that in Louisiana a provision of the *Fuero Real* (*Novísima Recopilación*, book 10, tit. 4, law 1), was in force because it had not been repealed; said provision established: "Everything which the husband and wife may acquire while together, shall be equally divided between them." And that such general provision prevailed although the Civil Code of Louisiana of 1808 provided: "Every marriage contracted in this state, superinduces of right, partnership or community of acquets or gains, if there be no stipulation to the contrary." After an elaborate discussion on what is understood by personal statute and real statute, it is concluded in the *Saul* case that the provision of the *Fuero Real* aforecopied is a real statute. Consequently, the property acquired in Louisiana by persons who have married outside that state was subject to community laws. The law of Louisiana was changed in 1825. It limited the property subject to community law to the property acquired in the state after

---

[3] In the solution of controversies involving tax laws we must first resort to the applicable provisions and to the fundamental principles governing the matter. *Serrallés v. Sec. of the Treasury*, 84 P.R.R. 10 (1961).

the spouses (who had married outside the state) had removed into the state. This law gave rise to several lawsuits and court decisions and in 1852 Louisiana finally added a provision to its Civil Code making the community system applicable to any property acquired in the state by non-resident married persons, regardless of whether the title appeared in the name of either or both of them.

We need not engage in a discussion of the nature of § 1295 of our Civil Code as to whether the statute is real or personal. Said section provides:

"By virtue of the conjugal partnership the earnings of profits indiscriminately obtained by either of the spouses during the marriage shall belong to the husband and the wife, share and share alike, upon the dissolution of the marriage."

Undoubtedly the control of the state prevails over all personal and real property situated within its territorial limits and, consequently, its laws can regulate the property rights. In the United States as well as in Puerto Rico the rule is that the real property belonging to the spouses is subject to the law of the *situs*. As to personal property the general rule which prevails, for convenience, is to the effect that it is subject to the laws of the spouses' domicile. Generally, international law, deprived of the *situs* of the property, refers the problem to the law of domicile.

■ Section 10 of our Civil Code (31 L.P.R.A. § 10), provides that personal property is subject to the laws of the nation of the owner thereof; and real property to the laws of the country in which it is situated. So that our own law, even in cases of personal property situated in Puerto Rico, remits its control to the law of the nation of the owner. We already know that in the United States the doctrine of the domicile governs and not that of nationality, for the reasons set forth in the case of *Lókpez* v. *Fernández*, 61 P.R.R. 503 (1943).

 Consequently, when our law refers to the nation of the owner it refers, as respects to the United States, to the law of domicile. Personal property, therefore, is governed by virtue of the local law, by the law of the domicile of the owner[4] which in the present case is the state of Massachusetts, where Shefftz was domiciled, where he contracted marriage, and where he continued to live until the date of his death. Pursuant to the law of Massachusetts, the shares acquired by Shefftz are his own separate property and the Secretary of the Treasury did not err in considering them so, for the purpose of the Inheritance Law.

 The Constitution of the United States provides in Art. IV, § 2, Par. (1), that "The Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States." This constitutional provision governs in Puerto Rico by virtue of § 2 of the Federal Relations Act.[5] But these privileges and immunities are those arising out of the United States citizenship, which are common to the citizens in those states under their constitutions and laws by virtue of their being United States citizens. The Federal Constitution protects and guarantees only the privileges and immunities pertaining to the "citizens of the United States" in contradistinction to the citizens of the states.[6] The property rights of Shefftz over the property acquired during his marriage are not rights growing or arising from United

---

[4] Commenting on § 10 of the Spanish Civil Code, which is equal to that in our Code insofar as it establishes the law to which property is subject, the commentators say that personal property is considered as an extension of the personality and, consequently, the personal statute is applied thereto in international conflicts. 1 Manresa, *Código Civil Español* 229.

[5] Said section provides:

"The rights, privileges, and immunities of citizens of the United States shall be respected in Puerto Rico to the same extent as though Puerto Rico were a State of the Union and subject to the provisions of paragraph 1 of section 2 of Article IV of the Constitution of the United States."

[6] See 16 Am. Jur.2d, p. 831 *et seq.*

States citizenship, and therefore, they are not among those protected and guaranteed by the Federal Constitution. We have already said that the aforestated rights of Shefftz are subject to the substantive laws of Massachusetts and stem from a marriage contract. These rights and privileges, because they arise from a contract, are not among those protected by the Constitution. *Conner* v. *Elliot*, 59 U.S. 591, 15 L.Ed. 497.

Nor have the heirs of Shefftz been denied the equal protection of the laws. We are not dealing here, as in the case of *Postley* v. *Secretary of the Treasury*, 75 P.R.R. 822 (1954), with a discrimination against the heirs of Shefftz, because they were not citizens of the United States. The residence or nonresidence of these heirs in Puerto Rico does not play any decisive part in respect to the levying of the inheritance and gift tax. This statute does not provide the formula for dividing the inheritance, or, consequently, the part of the hereditary estate corresponding to each heir. If Shefftz had married under the community law, either in Puerto Rico or any other state, his wife's rights as to her share in the community property would be acknowledged in Puerto Rico, by virtue of the substantial laws corresponding to the marriage contract but not by virtue of the Inheritance and Gift Act. The heirs of Shefftz are not in this case in a different position from that of the heirs of resident-citizens of Puerto Rico who had joined in matrimony in Puerto Rico after the execution of contracts stipulating conditions of the conjugal partnership other than the community partnership. Section 1267 of the Civil Code (31 L.P.R.A. § 3551).

The law is applicable equally to residents and nonresidents pursuant to the laws governing their marriage contract.

For the reasons stated, the judgment appealed from will be affirmed.