Iona Sutton LANE–BURSLEM,
Appellant,

v.

COMMISSIONER OF INTERNAL
REVENUE.

COMMISSIONER OF INTERNAL
REVENUE, Appellant,

v.

Iona Sutton LANE–BURSLEM.

Nos. 80–1535, 80–1536.

United States Court of Appeals,
District of Columbia Circuit.

Argued April 14, 1981.

Decided July 13, 1981.

Robert E. Falb, Washington, D. C., with whom Robert E. Liles, II, Washington, D. C., was on the brief for appellant in No. 80–1535 and cross-appellee in No. 80–1536.

James F. Miller, Atty. Dept. of Justice, Washington, D. C., with whom M. Carr Ferguson, Asst. Atty. Gen., Michael L. Paup, Carleton D. Powell, and James F. Miller, Attys., Dept. of Justice, Washington, D. C., were on the brief for appellee in No. 80–1535 and cross-appellant in No. 80–1536. Ernest J. Brown, Atty., Dept. of Justice, Washington, D. C., also entered an appearance for appellee in No. 80–1535 and cross-appellant in No. 80–1536.

Before TAMM and WALD, Circuit Judges and MARKEY *, Chief Judge, United States Court of Customs and Patent Appeals.

Opinion for the Court filed by Circuit Judge WALD.

WALD, Circuit Judge:

Appellant Iona Sutton Lane-Burslem challenges a decision of the Tax Court[1] upholding a deficiency[2] noted by the Commissioner of the Internal Revenue Service ("Commissioner") against her 1971 federal income tax return. Appellant contends that the assessment of the deficiency violates her fourteenth amendment right to equal protection of the laws since it results from the disallowance of an exclusion from income she claims would have been available to a similarly situated male. Finding that no person, male or female, in the position of appellant was entitled to the disputed exclusion from income, we affirm the decision of the Tax Court without reaching the constitutional issue.[3]

## I.  BACKGROUND

Until 1976, when Congress changed the statute,[4] the Internal Revenue Service ("IRS" or "Service") allowed some Americans working and residing abroad but domiciled in community property states to insulate one-half of their earnings from federal income taxation by attributing it to their nonresident alien spouses.[5] Despite an IRS and Tax Court finding that she had no legal basis for claiming that her salary should be considered community income, appellant asks the court to give her the benefit of this tax provision.

Appellant, born and bred in the Natchitoches Parish in Louisiana, has been employed overseas since 1951 by the United States Government as a teacher for dependents of United States military personnel.[6]

* Sitting by designation pursuant to 28 U.S.C. § 293(a).

1. The initial decision is *Lane-Burslem v. Commissioner* ("Initial Decision"), 70 T.C. 613 (T.C. 1978); Joint Appendix ("J.A.") 60. The supplemental opinion is *Lane-Burslem v. Commissioner* ("Supplemental Opinion"), 72 T.C. 849 (T.C.1979); J.A. 87.

2. The deficiency was calculated to be $1,252.47. *Lane-Burslem v. Commissioner*, Docket No. 934–75 (T.C. Jan. 25, 1980) (Order and Decision); J.A. 101.

3. Appellant filed timely notice of appeal to the United States Court of Appeals for the Fifth Circuit. The parties stipulated to venue for appeal with this court, in accordance with 26 U.S.C § 7482(b)(2). Dismissal of the action by the Fifth Circuit was entered on June 2, 1980. Brief for Appellant at 4.

The IRS also filed a cross-appeal in this action, asking this court to disallow one-half of the credit which the Tax Court allowed for taxes withheld from appellant's 1971 salary in the event we reversed the Tax Court. Because we affirm the Tax Court decision, we do not reach the question presented by the cross-appeal.

4. *See* 26 U.S.C. § 879 (1981 Supp.). This provision, enacted as section 1012(b)(1) of the Tax Reform Act of 1976, P.L. 94–455, and effective for the taxable years beginning after December 31, 1976, disallows attribution of earned income, despite its status as community income, to a nonresident alien spouse, unless the taxpayer and spouse elect to file a joint return in which the nonresident alien spouse is treated as a resident of the United States. In either case, the effect is a tax levy on the full amount of the earned income. The purpose of the amendment, according to the accompanying committee report, was to make "certain community property laws ... inapplicable for income tax purposes." S.Rep.No.1236, 94th Cong., 2d Sess. 455 (1976).

5. *See* Rev.Rul. 56–269, 1956–1 C.B. 317 (holding that "[a] nonresident alien wife's share of the community income derived from the performance of personal services by the husband for the United States Government in a foreign country does not lose its identity in her hands as income from sources without the United States and would not be subject to Federal income tax").

6. Appellant has been stationed at the Upper Heyford American High School in England since 1972. She has also taught at American dependents' schools in High Wycombe, England (1971–1972), Watford, England (1962–1970), London, England (1961–1962, 1957–1959), Morocco (1959–1960), Frankfurt, Germany (1956–1957, 1952–1954), Stuttgart, Germany (1954–1955), and Heidelberg, Germany (1951–1952). She returned to Louisiana to teach during the 1955–1956 academic year. Initial Decision at 614; J.A. 62–63.

In 1964, she married a British citizen, Eric Lane-Burslem. Since that time, the couple has resided together in England,[7] though both profess an intention to move to Louisiana following appellant's retirement in 1981 or 1982.[8]

In 1972, when she learned that a tax advantage was available to residents of community property states married to nonresident aliens, appellant filed an amended tax return[9] for the 1971 tax year[10] in which she denominated her income as community income, attributed one-half of it to her nonresident alien husband, calculated the tax due on the remainder, and demanded a tax refund. The Commissioner responded with a statutory Notice of Deficiency assessing federal income tax on the excluded income. Attached to the Notice was an Explanation of Adjustments, which read in pertinent part:

> It is determined that your domicile is the domicile of your husband therefore, since your [sic] are not domiciled in a community property state, you are not entitled to the income-splitting provision of Louisiana community property law.[11]

Appellant challenged the deficiency in the Tax Court, arguing that under Louisiana law, her earnings should be considered community property, or, alternatively, if her earnings were not considered community property because Louisiana law deemed her domicile to be that of her husband, Louisiana law invidiously discriminated against women because it made it harder for a married woman to qualify her earnings as community property than it did for a man.[12] The Tax Court affirmed the Service's interpretation of Louisiana law, holding that community property existed only if both spouses lived in Louisiana. The opinion failed, however, squarely to confront the equal protection implications of the hypothetical posed by appellant: that a nonresident woman's domicile could be deemed to be that of her Louisiana husband, thus entitling him to the exclusion from income denied appellant, while a Louisiana wife could not make a similar claim of exclusion for her nonresident spouse. Instead the Tax Court found appellant's marital domicile to be England even if a gender-neutral "facts and circumstances" test were applied.

---

**7.** They have moved within England, however, as appellant has been transferred to different schools following NATO base closings. *Id.*

**8.** In 1966 appellant and her husband first discussed the possibility of removing to Louisiana following her retirement. At trial, both claimed to have settled on this course of action at that time. J.A. 35 (testimony of appellant); J.A. 53–54 (testimony of Eric Lane-Burslem). However, Mr. Lane-Burslem first visited Louisiana in the summer of 1972. Initial Decision at 617; J.A. 67. Moreover, appellant's intention to return was motivated in large part by her knowledge that "all laws of average [sic] that I will outlive Eric," who is sixteen years older than appellant, and that she has "no ties in England other than Eric." J.A. 36 (testimony of appellant). Indeed, her testimony that "if Eric is not with me, my home is in Natchitoches," J.A. 36, lends support to the argument that appellant will not return to Louisiana unless her husband predeceases her, and thus that she lacks the firm, unconditional intent to return necessary to claim she has not renounced her Louisiana domicile. *See District of Columbia v. Murphy*, 314 U.S. 441, 456, 62 S.Ct. 303, 310, 86 L.Ed. 329 (1941).

**9.** Appellant is liable for American, rather than British, income taxes because of Article X of the North Atlantic Treaty: Status of Forces,

June 19, 1951, 4 U.S.T. 1792, T.I.A.S. No. 2846, 199 U.N.T.S. 67 (*entered into force* Aug. 23, 1953), which provides in pertinent part:

ARTICLE X

1. Where the legal incidence of any form of taxation in the receiving State depends upon residence or domicile, periods during which a member of a force or civilian component is in the territory of that State by reason solely of his being a member of such force or civilian component shall not be considered as periods of residence therein, or as creating a change of residence or domicile, for the purposes of such taxation. Members of a force or civilian component shall be exempt from taxation in the receiving State on the salary and emoluments paid to them as such members by the sending State or on any tangible movable property the presence of which in the receiving State is due solely to their temporary presence there.

4 U.S.T. at 1310–12; J.A. 30.

**10.** Appellant filed amended returns for the 1969 and 1970 tax years at the same time. Brief for Appellant at 8.

**11.** J.A. 8.

**12.** Initial Decision at 619; J.A. 72.

In a supplemental opinion, the Tax Court expanded its analysis. The court reasoned that appellant had no standing to raise the constitutional issue because the alleged constitutional violation arose not from the community property laws, but from the section of the Civil Code of Louisiana, Article 39, which presumes a woman's domicile to be that of her husband.[13] Since without this presumption, no person in appellant's situation—regardless of sex—could claim community property status attached to income earned abroad, a ruling that the presumption was unconstitutional would not benefit appellant. Rather, it would result in the denial of the benefit to all Louisiana domiciliaries, like appellant, married to nonresident aliens.[14] Thus, the court concluded, resolution of the constitutional challenge was unnecessary to settle the dispute in the instant case.

## II. THE ISSUE

On appeal, appellant presses only her constitutional argument, that because a similarly situated male would be allowed to exclude one-half of his income from federal income taxation as community property owned by a nonresident alien spouse, she is entitled to the same benefit.[15] However, as a preliminary matter we must confront the question raised by the Service: whether

Louisiana law[16] provides community property treatment of any income earned outside the state by any person, man or woman, in appellant's situation.

## III. ANALYSIS

Appellant premises her argument that the sex-based domiciliary presumption in Article 39 is determinative of the existence of a community interest in her salary on her interpretation of the requisites of a community property regime under Louisiana law: "[t]o obtain the benefits of community property, a taxpayer must establish [only] that he or she is domiciled in a community property state."[17] In fact, Louisiana has a more complicated system for determining whether and to what extent a "community of acquets or gains" exists between partners in marriage.[18] The foundation of this system is contained in three articles of the Civil Code. Article 2399 establishes a community for "[e]very marriage contracted in this State...."[19] Article 2400 provides that "[a]ll property acquired in this State by nonresident married persons ... shall be subject to the same provisions of law which regulate the community of acquets and gains between citizens of this State."[20] Finally, Article 2401 declares:

> [a] marriage, contracted out of this State, between persons who afterwards come

13. Article 39 of the Louisiana Civil Code provides:
> A married woman has no other domicile than that of her husband; the domicile of a minor not emancipated is that of his father, mother, or tutor; a person of full age, under interdiction, has his domicile with his curator.
La.Civ.Code Ann. art. 39 (West).

14. Supplemental Opinion at 854–55; J.A. 99–100. Appellant challenges this conclusion, arguing that the proper remedy is to extend the presumption to include spouses of female domiciliaries rather than abolish it. *See* Brief for Appellant at 32–36. Because we find the presumption inoperative in this case, we express no opinion on the merits of this dispute.

15. *See* Brief for Appellant at 9–11.

16. At all times in this opinion, unless specifically denoted otherwise, we refer to Louisiana law as it existed in 1971. The Louisiana legislature substantially revised the community property system, including some of the statutes cited in

this opinion, in 1979. *See Kirchberg v. Feenstra*, 450 U.S. 455, 101 S.Ct. 1195, 67 L.Ed.2d 428 (1981) (holding portion of pre-reform Louisiana community property law unconstitutional; noting legislative changes).

17. Brief for Appellant at 16.

18. The Internal Revenue Code determines ownership of property for income tax purposes by reference to state law. *United States v. Mitchell*, 403 U.S. 190, 195, 91 S.Ct. 1763, 29 L.Ed.2d 406 (1971). The parties have stipulated that Louisiana law controls the issue in dispute here. Initial Decision at 618; J.A. 71.

19. La.Civ.Code Ann. art. 2399 (West). Appellant's marriage was contracted in and celebrated according to the laws of England. J.A. 36 (testimony of appellant).

20. La.Civ.Code Ann. art. 2400 (West).

here to live, is also subjected to community of acquets, with respect to such property as is acquired after their arrival.[21]

None of these statutes, on its face, provides a solution to the question facing this court: what, if any, community property interests are created when one and only one spouse of a marriage contracted out of state "come[s] . . . to live" in Louisiana though both profess an intention to reside there at a definite time in the future.[22] Appellant, relying on *Succession of McKenna*,[23] decided in 1871, argues that Article 39 fills this seeming gap. In *McKenna*, the nonresident alien wife of a Louisiana domiciliary claimed a community property interest in her husband's estate. The couple, like the Lane-Burslems, had been married abroad; the wife had never set foot in Louisiana.[24] Nonetheless, the court, adverting to Article 39 in conjunction with Article 2401, concluded that

> according to our law, the domicile of the wife was that of the husband, in New Orleans, and that a community of acquets and gains existed between them. . . . [25]

Over fifty years later, however, the Louisiana Supreme Court had another occasion to consider what community property interests exist when only one party to an out-of-state marriage resides in the state. Though the court did not expressly repudiate *McKenna*, it impliedly rejected McKenna's analysis. In *Succession of Dill*,[26] the guardian of a nonresident woman filed a claim for one-half of the estate of her husband, who had been domiciled in Louisiana.[27] The court traced the history of community property in Louisiana from its "promulgation by royal authority of the ancient customs of the kingdom of Castile" through its legislative revision in 1825 and 1852, and concluded that

> all these communities have, as their basis, equality between the spouses; that is to say, *property acquired in this state by either of them falls into the community.*

(Emphasis supplied).[28] The court then held that Article 2400, not Article 2401, determined the community interest of the wife, "for the one who remains away is certainly a nonresident married person," so that her interests extended to "all property acquired in this state." [29]

---

**21.** La.Civ.Code Ann. art. 2401 (West).

**22.** For purposes of this appeal, we will assume that appellant would still be deemed to live in Louisiana though she in fact resides in England. However, there is some question as to the validity of this assumption. Though the general rule is that "[r]esidence once acquired shall not be forfeited by absence on business of the state or of the United States," La.Rev.Stat. Ann. tit. 1 § 54 (West), even a soldier may lose his Louisiana residency if he acquires a residence elsewhere. *Id.; see Walsh v. Walsh*, 42 So.2d 860, 863, 215 La. 1099, 1108 (La.1949); *Walcup v. Honish*, 28 So.2d 452, 454, 210 La. 843, 849 (La.1946). Appellant's marriage to a British citizen, coupled with her continued actual residence in England, indubitably transformed her into an English resident under English law. 8 Halsbury's Laws of England ¶ 431, at 323 (4th ed. 1974). Moreover, appellant admits she and her husband did not form an intention to leave England following her retirement until two years after the marriage. In the circumstances of this case, her apparent abandonment of her fixed intention to return to Louisiana for this two year period might cast doubt on the legitimacy of her claim to Louisiana residency. *See District of Columbia v. Murphy, supra*, 314 U.S. at 456, 62 S.Ct. at 310.

**23.** 23 La.Ann. 369 (La.1871).

**24.** Hugh McKenna, "a merchant of New Orleans," married in England in 1844. He returned to New Orleans on an unspecified date, leaving his wife in Europe. In 1861, in poor health, he returned to England; his wife, who had been in Belgium, met him in London. They travelled together throughout Europe until his death in 1864. *Id.* at 372.

**25.** *Id.*

**26.** 98 So. 752, 155 La. 47 (La.1923).

**27.** Dill married the claimant in 1887 in the state of New York. The couple then removed to Texas. The husband moved to Louisiana alone some time later, where he established a domicile and acquired an estate worth $60,000. His wife was committed to an insane asylum in New York in 1902.

**28.** *Succession of Dill, supra*, 98 So. at 755, 155 La. at 56.

**29.** *Id.*

Moreover, *Dill* was recently approved in two decisions written by the Louisiana Court of Appeal,[30] and scholarly analysis of Louisiana's community property law focuses on *Dill* as the controlling precedent on community property.[31] Thus, *McKenna* seems to have slipped into the hazy bayous of Louisiana jurisprudence, superseded by *Dill*'s [32] analysis which rests on the specific language of Art. 2400 imputing community property status only to "property acquired in [the] State." In short, we think that if a Louisiana court were confronted with our case, it would not hold that Article 2401 and Article 39 combine to accord domiciliary status to a nonresident alien spouse so that all property acquired at any location by either spouse after marriage falls within Louisiana's community property laws, but rather it would find that such nonresident spouse's community interest in the domicil-

iary spouse's property would be limited to property "acquired in this State." [33] As appellant's salary was acquired in England, not Louisiana,[34] her husband gained no community property interest in it; the Service therefore properly disallowed the claimed exclusion from income.[35] Since this result is unaffected by the sex of the domiciliary, it suffers no constitutional infirmity.

Further, this result comports with general conflict of laws principles. These principles were summarized in *West v. United States*,[36] in which the Court of Claims held that in the absence of "controlling . . . authority," [37] the ownership interests in marital personal property should be determined by the internal law of the state with the most significant relationship to the spouses and to the earnings.[38] The court found that Spain had the most significant relationship when the "husband and wife

---

30. *See Fuori v. Fuori*, 334 So.2d 488, 494 (La.Ct. of App.1976); *Crichton v. Succession of Crichton*, 232 So.2d 109, 116 (La.Ct. of App. 1970).

31. *See* Note, *Conflict of Laws: Property Acquired After Marriage*, 35 La.L.Rev. 125, 130–31 (1974); Note, *Conflict of Laws—Conflict Between New York Marital Domicile Doctrine and Louisiana Situs Rule as to Personal Property*, 42 Tul.L.Rev. 662, 667 (1968).

32. No conflict may in fact exist, as the court in *McKenna* also disposed, solely of property deemed to be located in Louisiana. *Succession of McKenna, supra*, 23 La.Ann. at 372. It is speculative though whether even the *McKenna* court would have been willing to impute domicile and the existence of a community property regime to a nonresident alien spouse if the property had been acquired and located elsewhere.

33. *See* La.Civ.Code Ann. art. 2400 (West). Our conclusion that a Louisiana court would rely on Article 2400 is buttressed by the fact that, in the past, the Louisiana Supreme Court has avoided ruling on the constitutionality of Article 39 by utilizing alternate, gender-neutral statutes to resolve legal disputes. *See Johnson v. Welsh*, 334 So.2d 395 (La.1976) (holding woman could establish separate domicile from husband for purposes of divorce action under statutory scheme; chided appellate court for unnecessarily deciding that Article 39 was unconstitutional).

34. Appellant pays no Louisiana income tax on her salary because it is earned outside of Louisiana. J.A. 44 (testimony of appellant).

35. Appellant points to a number of cases in which the Tax Court and other federal courts allowed a husband domiciled in a community property state to attribute one-half of his income to a nonresident alien spouse. *See, e. g., Commissioner v. Cavanagh*, 125 F.2d 366 (9th Cir. 1942); *Marshall v. Commissioner*, 41 B.T.A. 1064 (B.T.A.1940). In each case, however, the court initially determined that the law of the state involved established a community property interest in the spouse. Other states may have laws which link the domicile of one spouse to the imposition of a community property regime on all marital assets; so far as we can tell, however, Louisiana does not. As the availability of the tax benefit at issue in this case depends on appellant's rights under Louisiana law, the cases cited by appellant, decided according to the laws of other states, are irrelevant. Appellant's dependence on Rev.Rul. 56–269, *see* note 5 *supra*, is inapposite for the same reason. The ruling assumes the existence of a state-created property interest in the nonresident alien spouse as a predicate for its conclusion that the exclusion of that interest from taxable income is permissible. That necessary predicate is absent in the instant case.

36. 44 A.F.T.R.2d ¶ 5040 (Ct.Cl. Jun. 1, 1979).

37. *Id.* at 79–5095.

38. *Id.* at 79–5096.

[were] domiciled in different places (Kansas and Spain), residing in one place (Spain), which is also the jurisdiction where the money was earned," [39] and therefore concluded that the husband's salary, in accordance with the demands of Spanish law,[40] was community property. Here, too, we would be hard-pressed to make a case that England did not have the most significant relationship to appellant's earnings, even if it lacks the power to tax them.[41] Under English law, appellant would hold her income as separate, not community, property.[42]

In sum, we find that the income earned abroad in 1971 by appellant or any other person similarly situated is not subject to Louisiana's community property laws. She therefore has no legal basis for claiming that she should be entitled to an exemption of one-half of that income as belonging to her nonresident alien spouse. The judgment of the Tax Court is

*Affirmed.*

---

**39.** *Id.* at 79–5095.

**40.** The court found it very significant that Spain "affirmatively elected to have the ownership of Spanish earnings of spouses married in Spain determined by Spanish principles of community property . . . ," because "it is . . . a recognized precept that in any event the situs state—the place where the income was earned or the movable was acquired—can determine the marital interests by its own law if it affirmatively seeks to do so." *Id.* at 79–5095–96.

**41.** Here, as in *West,* though one spouse was domiciled elsewhere, *see* note 22 *supra,* the other party was domiciled, the marriage had been celebrated, both parties resided, and the income had been earned in the foreign jurisdiction.

**42.** It is undisputed that England, like Spain, affirmatively elects to determine the marital interests in property of persons such as appellant and her spouse. *See* 8 Halsbury's Laws of England, *supra,* ¶¶ 513–14, at 370–71.