334 So.2d 488 (1976)
Ellen Watson FUORI, wife
v.
Michael A. FUORI, husband.
No. 10724.
Court of Appeal of Louisiana, First Circuit.
May 24, 1976.
Rehearing Denied June 30, 1976.
*489 Keith M. Whipple, Houma, for appellant.
Lloyd J. Bourgeois, Houma, for appellee.
Before SARTAIN, EDWARDS and CHIASSON, JJ.
CHIASSON, Judge.
Michael A. Fuori, husband and appellant, has brought this appeal from a judgment granting Ellen Watson Fuori, wife and appellee, a separation from bed and board. In his Reasons For Judgment the Trial Judge provided the following summary of the facts of this case:
"Ellen Watson and Michael Fuori were married in the State of New York on June 30, 1936. They lived with Mr. Fuori's father for approximately four years in Central Islip, New York. Then they moved into a little house adjacent to Mr. Fuori's father's house. Mr. Fuori went away to flying school, first in Suffolk County and then on Cape Cod. After Mr. Fuori returned from Cape Cod, the Fuoris lived in Central Islip until Mr. Fuori got a position in Texas as a pilot. Mr. Fuori went to Texas first, and was afterwards joined by his two brothers, and Mrs. Fuori and their young son. Later, Mr. Fuori's sister joined them in Texas. They lived in Texas for approximately two years until Mr. Fuori got a job in New York as a test pilot. They then lived in Central Islip about a year and a half. At the end of World War II, Mr. Fuori was laid off from his job as a test pilot and got a job at the Aviation Country Club in Hicksville. Mr. and Mrs. Fuori continued to live at Central Islip. This lasted for about a year, until Mr. Fuori got a job working for Miss Betty Costive in Miami, Florida. Mr. Fuori lived in Florida alone for about a year, and then he sent for his wife and son to come to Florida as he had found a place for the summer. They were to look for a permanent home while they were in Florida. They stayed in Florida for about two and half or three months. Then, although it appears that the contentions of the parties to this suit vary,

*490 this Court finds, as was testified, that Mrs. Fuori found some letters written by another woman to Mr. Fuori. Mrs. Fuori went back to New York and stayed at William Fuori's house. Afterward, Mrs. Fuori lived in and was employed in Brookville and Long Island. About two months later, Mrs. Fuori was visited by her husband, who said he had taken a job with Texaco in Louisiana to start in November of 1948, and they would then be back together again. Mrs. Fuori offered to come to Louisiana, but her husband said she should wait. She again offered to come to Louisiana when her husband was up in New York a little later, but her husband discouraged her saying that he did not like Louisiana, and it would be detrimental to Mrs. Fuori's health for her to live here. Mr. Fuori also said he would get a transfer to New York. In about 1950, Mrs. Fuori bought a house in Farmingdale, New York, where she still lives. Throughout the years, Mrs. Fuori repeatedly offered to join her husband in Louisiana, but her husband advanced the same reasons for her not to come to Louisiana. Her husband visited her at least once a year in New York, during vacations and sometimes at Christmas, and they went out together and generally conducted themselves as husband and wife.
"In about 1949 Mr. Fuori met Miss Dorothy Hurst, who lives in Houma, and started dating her. At first he dated her rather unfrequently, but they gradually began seeing one another more and more until recently, Mr. Fuori saw Miss Hurst almost every day. They went out together, and Miss Hurst visited Mr. Fuori's house in Houma and he visited her apartment in Houma.
"Mrs. Fuori gradually found out about Miss Hurst. Once when she telephoned Mr. Fuori in Houma, a high-pitched voice, believed to be that of Miss Hurst, answered the telephone. Also, when the Fuoris' son, William Fuori, who was then grown, flew to Louisiana with his father when his father was about to have a rather serious operation, Mr. Fuori told William that Miss Hurst would meet them at the airport.
"In 1970, Mrs. Fuori filed suit against Mr. Fuori before this Court for separation from bed and board. The parties became reconciled, and the suit was dismissed. However, Mr. Fuori continued to see Miss Hurst. The present action was filed on April 17, 1974, by Mrs. Fuori against Mr. Fuori, seeking separation from bed and board on the grounds of cruel treatment. A temporary restraining order was issued that day forbidding Mr. Fuori from alienating community property. This temporary restraining order was extended on motion of plaintiff from time to time.
"Before the suit for separation was filed in Louisiana, a suit for divorce was filed in New York by Mr. Fuori against Mrs. Fuori. Service of process upon Mrs. Fuori, through her New York attorney, was not effected until after the present separation suit was filed.
"Counsel for Mr. Fuori filed an exception to the jurisdiction of this Court in the separation suit, a motion to stay the present separation suit until the divorce suit was decided in New York, and a motion to dissolve the temporary restraining order against alienating community property on the grounds that Article 149 of the Louisiana Civil Code was unconstitutional. This Court held that it had jurisdiction, refused to issue a stay order, and refused to dissolve the temporary restraining order, assigning written reasons for judgment. Defendant sought supervisory writs, which were denied on the grounds that an adequate remedy was had by appeal. (See transcript of Appellate record, 10103, p. 16) Counsel for plaintiff filed a contempt rule on the grounds that defendant had violated the temporary restraining order by alienating community property. This *491 issue was referred to the merits. Counsel for plaintiff also filed an alimony rule for alimony pendente lite. Alimony for Mrs. Fuori from Mr. Fuori was awarded in the amount of $858.80 per month, payable semi-monthly. Mrs. Fuori was also awarded the rental income from the New York property. Defendant appealed from this ruling, and the judgment of the trial Court was affirmed."
After a trial on the merits, the Trial Court rendered judgment decreeing a separation from bed and board, perpetuating the preliminary injunction and permanently enjoining the appellant from disposing or encumbering any of the property belonging to the community of acquets and gains existing between he and his wife. In addition, the Trial Court found the appellant to be in contempt of Court for alienating community assets in violation of the temporary restraining order which was issued by the Court. The appellant was ordered to reimburse the community of acquets and gains the value of the assets alienated, $20,900.00. The appellee was awarded alimony pendente lite in the amount of $858.80 per month.
The errors complained of by the appellant are that the District Court:
1. did not have jurisdiction in the matter;
2. erred in granting a separation;
3. erroneously issued a permanent injunction;
4. erroneously held the appellant in contempt and erroneously ordered him to reimburse the community; and
5. erred in declaring the property acquired by the appellant to be community property.
As to the appellant's first specification of error, Article 10 of the Louisiana Code of Civil Procedure provides:
"A. A court which is otherwise competent under the laws of this state has jurisdiction of the following actions or proceedings only under the following conditions:
* * * * * *
"(7) An action of divorce, or of separation from bed and board, if one or both of the spouses are domiciled in this state and, except as otherwise provided by law, the grounds therefor were committed or occurred in this state, or while the matrimonial domicile was in this state".
The appellant, Mr. Fuori, is domiciled within this state. The grounds for separation from bed and board, cruel treatment in the form of the appellant seeing another woman over a period of twentyfive years, occurred in this state. Since one of the parties is domiciled in this state and the grounds for separation occurred in this state, the District Court had jurisdiction.
Article 138 of the Louisiana Civil Code provides:
"Separation from bed and board may be claimed reciprocally for the following causes:
. . . . . . . . . .
"(3) On account of habitual intemperance of one of the married persons, or excesses, cruel treatment, or outrages of one of them toward the other, if such habitual intemperance, or such ill-treatment is of such a nature as to render their living together insupportable."
The cruel treatment alleged by the appellee was the association of the appellant with another woman for a period of approximately twenty-five years and the refusal of the appellant to discontinue this relationship. In Holmes v. Holmes, 23 So. 324 (La.1898), the association of the husband with another woman over a period of seven years, which association led to mutual aversion, was cruel treatment sufficient to put the husband at fault. The appellant *492 contends that the appellee is not entitled to a separation because she is not free from fault. In essence, the appellant's contention is that when the appellee left the appellant in Florida, she abandoned the matrimonial domicile and has since refused to return to it. The appellant also argues that since this abandonment there has been no reconciliation condoning the appellee's fault.
The refusal of the wife to follow her husband or the abandonment of the matrimonial domicile by her can constitute fault on her part. Richards v. Garth, 223 La. 117, 65 So.2d 109 (1953); Smith v. Smith, 148 So.2d 827 (La.App., 4th Cir., 1963); Douglas v. Douglas, 146 So.2d 227 (La.App., 3d Cir., 1962). However, where given cause, the wife may leave the matrimonial domicile without her being considered at fault. Bush v. Bush, 232 La. 747, 95 So.2d 298 (1957); Richards v. Garth, supra. The Trial Court found, based on the appellee's testimony, that the reason the appellee left the parties' temporary summer home in Florida was some letters found by the appellee written by another woman to the appellee's husband. An Appellate Court will not substitute its judgment for that of the Trial Court in evaluating the credibility of witnesses or in making determinations of fact, in the absence of manifest error. May v. Finest Foods, Inc., La.App., 303 So.2d 192 (4th Cir. 1974); Bailey v. Vinton Nursery, Inc., La.App., 285 So.2d 317 (3rd Cir. 1973); Louisiana National Bank of Baton Rouge v. Heroman, La.App., 280 So.2d 362 (1st Cir. 1973). In addition, there is no evidence establishing appellant's contention that the appellee refused to join him in Louisiana. The record indicates that the reason the appellee remained in New York was that the appellant did not want her to join him in Louisiana. Because the appellee did not abandon the matrimonial domicile without cause or refuse to join the appellant in Louisiana, she is not at fault. Therefore, the appellee does not need to prove reconciliation.
The appellants' third specification of error is that the Trial Court erroneously granted a permanent injunction in the Judgment of Separation, prohibiting him from disposing of or encumbering any of the property belonging to the community of acquets and gains.
Appellant's contentions are:
(1) No statutory authority exists for the issuance of such an injunction;
(2) It is a contradiction of terms to restrain appellant from disposing of the property belonging to the "community" when the judgment of separation dissolves the "community" once the judgment has become final.
It would appear that the only reported case in which a Court granted a permanent injunction prohibiting the husband from alienating or encumbering community property as a part of a judgment of separation from bed and board was Talbert v. Talbert, 192 La. 837, 189 So. 448 (1939). In that case the injunction was part of the judgment and not an issue before the Court.
Article 3601 of the Louisiana Code of Civil Procedure provides:
"An injunction shall issue in cases where irreparable injury, loss, or damage may otherwise result to the applicant, or in other cases specifically provided by law. . . ."
The law specifically provides for injunctions in suits for separation from bed and board:
1. "During the suit for separation, the wife may, for the preservation of her rights, require an inventory and appraisement to be made for the movables and immovables which are in possession of her husband, and an injunction restraining him for disposing of any part thereof in any manner."
La.C.C. Art. 149.

*493 2. "Either party to an action for separation from bed and board or divorce may obtain injunctive relief without bond prohibiting the other party from disposing of or encumbering community property."
La.C.C.P. Art. 3944.
In Arcemont v. Arcemont, La.App., 162 So.2d 813, 815, the Court held:
"The judgment for separation from bed and board carried with it the dissolution of the community of acquets and gains and the parties thereafter occupied the status of co-owners of the property." (Citing several authorities.)
Under C.C.P. Art. 3601, any person may obtain an injunction upon showing irreparable injury, loss, or damage and this would include a husband or wife who are coowners.
Even assuming that the husband or wife is not entitled to an injunction as a matter of right under the statutes quoted above, the evidence presented in this case supports the Trial Court's finding of irreparable injury and the issuance of an injunction under C.C.P. Art. 3601.
The next issue raised by the appellant is that of the judgment of the District Court finding him in contempt and ordering him to reimburse the community the sum of $20,900.00. The appellant contends he was not in contempt because his action was not the "wilful disobedience of any lawful judgment, order, mandate, writ, or process of the court. . .", which constitutes constructive contempt under Art. 224(2) of the Louisiana Code of Civil Procedure.
In New Orleans F. F. Ass'n Loc. 632 v. Cit yof New Orleans, La.App., 260 So.2d 779 (4th Cir. 1972), "wilful disobedience" was defined as "an act or a failure to act that is done intentionally, knowingly and purposely, without justifiable excuse." In that case the Trial Court found that the city was not in contempt because its position "was taken in good faith and on the basis of a conscientious belief in the validity of its interpretation of the law": and because of the financial position of the city. While appellant's sell order with regard to the stock was issued prior to issuance of the initial restraining order, the funds derived from the sale of said stock were not received and transferred by appellant until after the restraining order was in effect. The appellant in this case offers no "justifiable excuse" for the alienation of the community funds and his immediate transferral of the funds to a third party justifies the Trial Court's determination that his actions were not taken in good faith. The appellant was in constructive contempt of Court and is required to return to the community the value of the assets alienated.
The final contention of the appellant is that the Trial Court erred in decreeing that a community of acquets and gains existed between the parties. The articles of the Civil Code which establish the community provide:
"Every marriage contracted in this state, superinduces of right partnership or community of acquets or gains, if there be no stipulation to the contrary."
La.C.C. Art. 2399.
"All property acquired in this State by non-resident married persons, whether the title thereto be in the name of either the husband or wife, or in their joint names, shall be subject to the same provisions of law which regulate the community of acquets and gains between citizens of this State."
La.C.C. Art. 2400.
"A marriage, contracted out of this State, between persons who afterwards come here to live, is also subjected to community of acquets, with respect to such property as is acquired after their arrival."
La.C.C. Art. 2401.
*494 The appellant contends that under the facts of the present case these articles do not provide for the existence of a community of acquets and gains between the parties. That is, these articles do not specifically provide for the existence of a community where the parties were not married in this state and only one of the parties is a resident of this state.
This contention was answered by the Supreme Court of this state in Succ. of Dill, 155 La. 47, 98 So. 752 (1923), wherein the Court held that under Civil Code Article 2400 all property acquired in this state by married persons becomes community property regardless of where both or either of them reside, unless they have contracted otherwise. The parties to this litigation have not contracted otherwise.
Therefore, the judgment appealed from is affirmed at appellant's costs.
AFFIRMED.