WATSON, Justice.
The community regime formerly existing between the parties was dissolved by a legal separation. LSA-C.C. art. 155. The issue is whether the plaintiff wife may maintain pre-separation injunctions or obtain a writ of sequestration to protect her undivided interest in the community property.
Plaintiff, Charlotte Suire Davis, obtained injunctive relief on November 17, 1981. Her husband, Edson L. Davis, the Whitney National Bank, E. F. Hutton & Company, Inc., and Hibernia National Bank were ordered to refrain:
“From disposing of, alienating or encumbering any of the property owned by the community of acquets and gains existing between plaintiff and defendant, or belonging to the minors; and further, from withdrawing, converting or disposing of any of the funds on deposit in certificates of deposit, money market funds, or contents of safety deposit boxes, (but not including checking accounts in the names of Davis Industries, Inc., or Davis Ready Mix Inc.) in the names of Charlotte S. Davis, Edson L. Davis, or of the minors Courtney Davis, Yvette Davis, Edson L. Davis, Jr., and Christopher Davis as well as the aforementioned businesses, namely; Davis Industries, Inc., Davis Ready Mix, Inc., Ultra-Mortar of Louisiana, Inc., Con-AGG Leasing Corporation and D & S Aggregate Transporters, Inc.”
The injunction issued to prevent the husband from abusing his control of the corporations which own the community assets, to-wit: Davis Industries, Inc.; Davis Ready Mix, Inc.; Con-AGG Equipment Leasings, Inc.; D & S Aggregate Transportation, Inc.; Ready Mix, Inc.; Ultra Mortar, Inc.; and, Ultra Mortar of Louisiana, Inc. Because these corporations were deemed alter egos of Mr. Davis, the trial court restrained alienation or encumbrance of the corporate assets except as allowed by court order. The preliminary injunctions did not prevent Davis and the corporations from engaging in the ordinary course of business.
On December 8,1981, a judgment of separation was rendered based on the mutual fault of the parties. The judgment allowed for alimony, child support and other incidental matters. Since the judgment of separation did not nullify the prior injunctions, *434 Whitney National Bank refused to continue doing business with Mr. Davis without a court order. Mr. Davis moved to have the injunctions decreed null. Mrs. Davis petitioned for partition of the community asking that the property be sequestered without bond during the pendency of the suit.
The trial court declined to decree the injunctions null and also refused to issue a writ of sequestration. The Court of Appeal granted a writ of mandamus and decreed that the judgment of separation automatically terminated the previous injunctions. Davis v. Davis, 410 So.2d 272 (La.App. 4 Cir. 1982). The Court of Appeal indicated in a footnote that the wife was not entitled to a sequestration of the assets of the former community. A writ was granted to consider whether the judgment of separation automatically terminated the injunctions against alienation of the community property and whether the wife is entitled to a writ of sequestration. 411 So.2d 47 (La., 1982).
At the pre-separation hearing on the injunction, Edson Davis testified that his children own stock in Davis Industries and he has a voting trust of the 6,882 shares held by his four children and 1,400 shares owned by him personally. The only other stock consists of 122 shares owned by his father. Davis is the sole director of this corporation and the president. Davis admitted that he has sole control. Davis Industries and Davis Ready Mix, Inc. are both in the ready mix concrete business but serve different areas. Edson Davis is the sole stockholder, sole director and president of Davis Ready Mix, Inc. Davis is also the sole stockholder, director and president of Con-AGG Equipment Leasing Corporation. The only assets of this corporation are three Mercedes automobiles. D & S Aggregate Transportation, Inc., Ultra Mortar of Louisiana and Ultra Mortar, Inc. are other companies where Davis is the sole stockholder and sole director. Ready Mix, Inc., is a new corporation formed to handle concrete business for the Louisiana Exposition or World’s Fair.
Although Davis draws a salary from Davis Industries, he testified frankly that furniture which he purchased for his apartment was paid for by D & S and the rent and utilities by Davis Industries. These monies were reflected on the corporate books as loans to Davis. There are various judgments against Davis personally, which are being paid by the corporations. According to his testimony, a $100,000 certificate of deposit in the names of his children, plus an additional $20,000 in interest, was transferred to Davis Industries’ general account. Davis testified that this was necessary because of slow payment of his receivables. The money for the C.D. had come from the children’s pay checks “and so forth”. (Tr. 53) Davis also purchased property in the name of Davis Industries for $67,000 and had an agreement to purchase a square of ground for Ready Mix, Inc., but was unable to close the agreement. To obtain the deposit for Ready Mix, Inc., Davis was “just taking all the funds that I could get; my payroll checks, my children’s payroll checks and these interest checks.” (Tr. 59-60) The funds were returned because the deposit was not made timely.
A certificate of deposit in the name of Courtney Davis at the Hibernia Bank was reinvested at E. F. Hutton in the names of Davis Industries and Davis Ready Mix. According to Davis, the initial investment at Hibernia had come from checks on those two companies.
Davis Industries has been profitable and had a profit of $130,000 in 1980. According to Davis, the concrete business requires personal owner attention and an injunction which would require a court order for each substantial decision would result in a situation where he might as well quit operating.
As the trial court stated, Davis is the biggest asset of the corporations but they function as his alter egos and he obviously believes they belong solely to him. To protect the wife, the trial court enjoined alienating or encumbering any of the assets of the corporations, except for that necessary in the normal and ordinary course of business.
During a suit for separation, a spouse may require an inventory and appraisal of the community property and an injunction *435 restraining the disposition of the community property. LSA-C.C. art. 149 provides:
“During the suit for separation, a spouse may, for the preservation of his rights, require an inventory and appraisement to be made of the community property and obtain an injunction restraining the disposition of the whole of the community or of specified things of the community property.”
Neither Article 149 nor any other codal article or statute provides for the automatic termination of such an injunction. An inventory of the property belonging to this community has been ordered, but apparently not completed.
LSA-C.C.P. art. 3944 provides:
“Either party to an action for separation from bed and board or divorce may obtain injunctive relief without bond prohibiting the other party from disposing of or encumbering community property.”
No change of ownership in community property occurs with the entry of a separation judgment; prior to the judgment, the spouses own an undivided half interest; subsequent to the judgment, the spouses own an undivided half interest. Here, the judgment of separation made a de jure division of the community, but a de facto partition has yet to take place. Therefore, the necessity for injunctive protection contemplated by Article 149 remains the same.
 A party to a divorce or separation is entitled to injunctive relief to protect his or her share of the community property until the property is inventoried and/or partitioned. See In Re F. H. Koretke Brass & Mfg. Co., 195 La. 415, 196 So. 917 (1940) where the suit for injunction was brought after the divorce was final. An injunction obtained by a party to a suit for separation or divorce continues until: (1) there is a court order; or (2) the necessity abates because the community property has been inventoried and/or partitioned. See Fuori v. Fuori, 334 So.2d 488 (La.App. 1 Cir. 1976).
Since the injunctions against alienation of the community property protect the wife’s undivided interest in the community, she is not entitled to a writ of sequestration. LSA-C.C.P. art. 3571.
For the foregoing reasons, the judgment of the Court of Appeal is reversed insofar as it ordered that the injunctions against alienation of the former community property automatically terminated with the judgment of separation. The judgment of the Court of Appeal is affirmed as to denial of a writ of sequestration.
REVERSED IN PART; AFFIRMED IN PART; AND REMANDED.
CALOGERO, J., concurs.
LEMMON, J., concurs and assigns reasons.
DENNIS, J., concurs for reasons assigned by LEMMON, J.
MARCUS and BLANCHE, JJ., dissent and assign reasons.