802 So.2d 560 (2001)
Ivan L. HAND, Jr.
v.
Gwendolyn Robinson HAND.
No. 2001-C-0714.
Supreme Court of Louisiana.
November 28, 2001.
*561 Alfred S. Lippman, David M. Thorguson, Lippman, Mahfouz & Martin, Morgan City, Counsel for Applicant.
Allen A. McElroy, Jr., Berwick, Robert L. Duffy, Morgan City, McElroy & Duffy, Counsel for Respondent.
JOHNSON, Justice.[*]
We granted this writ application to determine whether the legal regime of a community of acquets and gains is created when one spouse acquires a Louisiana domicile and the other never resides in Louisiana. After a thorough review of the jurisprudence, we conclude that when parties are married elsewhere, both spouses must be domiciled in Louisiana to create a community property regime.

FACTS AND PROCEDURAL HISTORY
Ivan L. Hand, Jr. ("plaintiff") and Gwendolyn Robinson Hand ("defendant") were married in South Carolina on June 14, 1992 and shortly thereafter moved to England. In 1993, the defendant moved to South Carolina while the plaintiff moved to New Jersey. In 1994, the plaintiff moved to Morgan City, Louisiana while the defendant remained in South Carolina. The plaintiff filed for divorce on February 15, 1996 in the 16th Judicial District Court for the Parish of St. Mary. The judgment of divorce was signed on September 20, 1996, pursuant to Civil Code art. 102.[1]
The defendant filed a reconventional demand asserting that she was entitled to an equal division of all assets acquired by the plaintiff since February of 1991. She claimed that although that date preceded the marriage, she deserved an equitable division because the two parties had lived together. Alternatively, she claimed that the equal division should be prospective from the date of marriage. She also asserted a claim for division or equitable distribution of all assets or mismanagement of assets acquired by the plaintiff during the time he resided in Louisiana. *562 All of the assets to which she claimed entitlement were movables.
The plaintiff filed an exception of no cause of action. He claimed that the defendant did not have a claim for partition, equitable distribution or mismanagement of assets because all the assets he acquired prior to the marriage and while he resided in Louisiana were his separate property. The trial court found that a community of acquets and gains never existed between the parties. Therefore, it held that the property the plaintiff acquired while residing in Louisiana was not subject to Louisiana's community property regime.
The court of appeal determined that the legislature did not intend that both spouses need acquire Louisiana domicile for community property laws to apply. Consequently, it held that the community of acquets and gains applies to all spouses domiciled in this state, regardless of their domicile at the time of marriage or the place of celebration of their marriage. The court of appeal, therefore, reversed the trial court's ruling. We granted writs 01-0714 (La.5/11/01), 792 So.2d 1 and now reverse.

LAW AND ANALYSIS
We begin our analysis by reviewing the relevant provisions of the Louisiana Civil Code that define the various matrimonial regimes in Louisiana. Under our law, "[a] matrimonial regime is a system of principles and rules governing the ownership and management of the property of married persons as between themselves and toward third persons." LA. CIV.CODE art. 2325. Furthermore, matrimonial regimes may be either legal, contractual or a combination of the two. See id. art. 2326. The legal regime is the community of acquets and gains. See id. art. 2327. Community property includes all property acquired during the existence of the legal regime through the effort, skill or industry of either spouse. See id. art. 2338. Conversely, a contractual regime is one whereby the legal regime is either modified or terminated, thereby creating a separate property regime. See id. art. 2328. As such, separate property includes property acquired by a spouse prior to the establishment of a community; property acquired with separate things, or with separate and community things when the value of the community things is inconsequential compared to the value of the separate things; and property acquired by inheritance or individual donation. See id. art. 2341.
Louisiana has always been a community property state. See generally, DAGGETT, THE COMMUNITY PROPERTY SYSTEM OF LOUISIANA (1945). Moreover, Louisiana jurisprudence is well-settled in the presumption that all married persons living in Louisiana are under the legal regime (community property) unless they expressly designate otherwise. See, e.g., Robinson v. Robinson, 99-3097 (La.1/18/01), 778 So.2d 1105, 1113 (citations omitted). Spouses may enter into a separate property agreement "[d]uring the first year after moving into and acquiring a domicile in this state ... without court approval." LA. CIV.CODE art. 2329. If, however, they do not enter such an agreement within a year after establishing Louisiana domicile, they may only do so under court approval. See id; see also Robinson, 778 So.2d at 1114.
In the case sub judice, both spouses did not establish domicile in Louisiana. Rather, only the plaintiff moved to Louisiana while the defendant resided in South Carolina. Accordingly, the issue in light of our well-settled community property law, is whether one spouse's establishment of domicile in Louisiana subjects both spouses to Louisiana's governing community property regime. This issue was initially *563 addressed by this Court in Succession of Dill, 155 La. 47, 98 So. 752 (1923). It, however, has not been considered since the comprehensive 1979 Civil Code revisions to Louisiana's law on matrimonial regimes. Therefore, the issue is now ripe for our review.

Conflict of Laws Provisions
The court of appeal was correct in relying on the Civil Code's Conflict of Laws articles in determining whether the movable property in dispute is community or separate. In 1991, the Legislature adopted Book IV of the Civil Code to assist our courts in resolving claims where different jurisdictions apply different laws. Relevant to our examination is Civil Code article 3523. "[T]he rights and obligations of spouses with regard to movables, wherever situated, acquired by either spouse during the marriage are governed by the law of the domicile of the acquiring spouse at the time of acquisition." Id. (emphasis added). Moreover, the comments to article 3523 state:
[t]his Article is primarily a rule of classification and functions as a rule of distribution.... For example, if the acquiring spouse was domiciled in this state at the time he acquired the movable, then regardless of its location, this movable will be classified as community or separate property according to the law of this state.
Id. (comment (c)) (emphasis added). We, therefore, agree with the court of appeal's application of Louisiana's laws of matrimonial regimes. As such, we find it useful to examine the relevant legal history.

Jurisprudential and Statutory Background
In Dixon v. Dixon's Executors, 4 La. 188 (1832), this Court held that property acquired by a husband after moving to Louisiana, while his wife remained in Pennsylvania, was not subject to the community of acquets and gains. Thus, the property acquired in Louisiana was classified as separate property. Some years later, however, the Legislature codified article 2400 of the Civil Code of 1870 and abrogated Dixon. Article 2400 stated:
[a]ll property acquired in this state by non-resident married persons, whether the title thereto be in the name of either the husband or wife, or in their joint names, shall be subject to the same provisions of law which regulate the community of acquets and gains between citizens of this state.
LA. CIV.CODE art. 2400 (1870) (repealed by 1979 La. Acts, No. 709 § 7).
In Succession of Dill, 155 La. 47, 98 So. 752 (1923), this Court interpreted former article 2400. Furthermore, the First Circuit followed Dill in Fuori v. Fuori, 334 So.2d 488 (La.App. 1 Cir.1976). While there have been obvious changes in Louisiana's law of matrimonial regimes, we find Dill and Fuori relevant because of their factual similarity to the case sub judice. We also find Robinson, supra, important because it is factually distinguishable from the instant case. We believe that Dill and Fuori were correct under the old law. Under the 1979 revisions, however, we find that the same facts must yield a different outcome. Considering the forgoing, we find the court of appeal's reliance on Dill, Fuori and Robinson to be misplaced. Therefore, we will address each case in turn.
In Dill, the decedent husband married Caroline Rogers in the state of New York in 1887. The couple shortly thereafter moved to Texas. The husband then moved to Louisiana while, in 1902, his wife was committed to an insane asylum in New York. In 1904, Caroline Rogers' daughter (the stepdaughter of the decedent) was *564 legally appointed to serve as her mother's curatrix.
As a Louisiana domiciliary, the husband acquired an estate comprised of movable property valued at approximately $60,000. In 1922, just prior to his death, the husband executed a valid will declaring his sister, Mrs. Julia Dill Patton, as his sole heir. After Mr. Dill's death, his stepdaughter filed a claim on behalf of her mother for one-half of the decedent's Louisiana estate. She claimed that because Louisiana is a community property state, Mr. Dill's unilateral move to Louisiana evoked this state's governing community of acquets and gains.
In interpreting former Civil Code article 2400, the Dill Court held "we cannot conceive that the Legislature could possibly intend that in such a partnership [marriage] the property of the non-resident spouse should be common property, whilst that of the resident spouse should remain the separate property of that spouse." Succession of Dill, 98 So. at 754. The Dill Court, therefore, concluded that the proper interpretation of former article 2400 is that all property acquired by married persons in this state becomes community property, regardless of where both or either of them reside. See id. at 755.
In Fuori, supra, the First Circuit relied exclusively on our opinion in Dill. Ellen Watson Fuori ("wife") and Michael Fuori ("husband") married in the state of New York in 1936. The couple remained in New York for more than four years. They later moved to Texas, where they remained for two years, after the husband accepted a position as a pilot. They subsequently moved back to New York and then to Florida as the husband's employment changed. See Fuori, 334 So.2d at 489-90.
After contention in their marriage, the wife returned to New York and the husband moved to Louisiana. In attempts to reconcile, the wife repeatedly asked if she could join her husband in Louisiana. The husband, however, suggested that she not. Finally, in 1974, the wife filed an action in Louisiana seeking separation from bed and board on grounds of cruel treatment.[2] She also asserted an interest in one-half of all property the husband acquired while living in Louisiana. The trial court rendered judgment on behalf of the wife. See id. at 490-91.
On appeal, the First Circuit found that because the couple did not contract otherwise within the applicable one year statutory period, the community of acquets and gains applied to all property acquired by the Louisiana-domiciled spouse. See id. at 494. As such, under the pre 1979 revisions of the Code articles on matrimonial regimes, the husband could unilaterally establish domicile for himself and his spouse and the community of acquets and gains appropriately applied.
With 1979 La. Acts No. 709, however, the legislature enacted Civil Code article 2334, infra, and repealed article 2400. In analyzing article 2334, professors Katherine Spaht & W. Lee Hargrave state that in view of a companion act,[3] "there was no longer a basis for arguing that Louisiana's law of community property becomes applicable when only one spouse becomes a Louisiana domiciliary." 16 LOUISIANA CIVIL LAW TREATISE: MATRIMONIAL REGIMES, § 9.1 n. 5 (2d ed. 1997)("SPAHT & HARGRAVE") (emphasis added). Moreover, we are mindful that one of the main legislative focuses from 1973 to 1979 was to equalize the role of husband and wife and enact *565 "equal management" legislation. See Janet Mary Riley, Analysis of the 1980 Revision of the Matrimonial Regimes Law of Louisiana, 29 LOY. L.REV. 453, 454 (1980); see also La.Rev.Stat. Ann. § 9:2841-42 (Supp.1978) (repealed by 1979 La. Acts No. 709 § 5). As such, the husband is no longer "lord and master"[4] of his wife and her patrimony. See generally, Nina Nichols Pugh, The Evolving Role of Women in the Louisiana Law: Recent Legislative and Judicial Changes, 42 LA. L.REV. 1571 (1982); Katherine S. Spaht & Cynthia Samuel, Equal Management Revisited: 1979 Legislative Modifications of the 1978 Matrimonial Regimes Law, 40 LA. L.REV. 83 (1979). The equal management system the Legislature adopted in 1979 is similar to that of the other community property states. See Riley, 29 LOY. L.REV. at 455 n. 6 (citations omitted). It, therefore, seems untenable in this day-and-age, where spouses act independently and on equal footing, that the defendant should be able to assert an interest in movable property acquired by the plaintiff in Louisiana, while the plaintiff cannot assert the same in property acquired by the defendant in South Carolina.
In Robinson, this Court determined the appropriate ownership interest of partitioned community property belonging to spouses who were domiciled in Louisiana. June Coleman ("wife") and Leslie Robinson ("husband") were married in 1955. During their marriage, the husband was employed with the federal government as an administrative law judge. Consequently, he was transferred to different states on many occasions. They lived as husband and wife in Wyoming, Texas, California and Virginia; however, they spent the majority of their marriage in Louisiana. See Robinson, 778 So.2d at 1110.
The parties were judicially separated in 1986. At that time, they had been living together in Louisiana since 1978. On their date of separation, the community of acquets and gains was terminated. As such, the husband subsequently established domicile in North Carolina. The wife, however, remained in Louisiana. See id.
In Robinson, we affirmed the long-standing position that Louisiana is a community property state. The facts in Robinson, however, are distinguishable from the case sub judice. In Robinson, both "spouses" lived in Louisiana. As such, the community of acquets and gains was properly established. Conversely, in the instant case, only the plaintiff established domicile in Louisiana. Therefore, the community of acquets and gains was never established in this state. Accordingly, under the 1979 Code revisions, we find the court of appeal's emphasis to be misplaced.
With the purpose of the 1979 Code revisions in mind, our attention is properly turned to the express language of Civil Code article 2334. It provides: "The legal regime of community of acquets and gains applies to spouses domiciled in this state, regardless of their domicile at the time of marriage or the place of the celebration of their marriage." (emphasis added). A comment to article 2334 notes that "spouses not domiciled in Louisiana at the time of their marriage become subject to the provisions of this Title from the moment they become Louisiana domiciliaries." Id. (comment (b)) (emphasis added). Moreover, in examining the plural use of the term "spouses," we are mindful of professors Spaht & Hargrave's position that the predecessor article to our current Civil Code[5] "supports the conclusion that if only *566 one spouse moves to Louisiana and establishes domicile here, the Louisiana law of matrimonial regimes, and even more particularly the legal regime of the community of acquets and gains, is not applicable." SPAHT & HARGRAVE, § 9.1.
We agree with the court of appeal's application of Louisiana law. We, however, disagree with the court's reliance on Dill and Fuori. Both cases interpreted a Code article the Legislature expressly repealed in 1979. Furthermore, we note the Legislature's singular use of the word "spouse" in article 3523 and contrast it with the plural "spouses" in articles 2329 & 2334, supra.
Therefore, we believe the court of appeal erred in holding that Civil Code article 2334 requires only one spouse to become a Louisiana domiciliary for the community property regime to govern. We are persuaded by the purpose of 1979 La. Acts No. 709 and its effort to treat husband and wife equally. We must assume that the Legislature intentionally used the plural "spouses" in article 2334 and did not do so in error. Use of the plural form "suggest[s] that for the matrimonial regimes law of Louisiana to apply, proof is required that both spouses have moved into and acquired a domicile in Louisiana.... Thus, the quoted language [article 2334] negates any inference that Louisiana's legal regime of the community of acquets and gains may apply to a non-Louisiana spouse." SPAHT & HARGRAVE, § 9.1 (emphasis in original).

CONCLUSION
Former Civil Code article 2400 was expressly repealed as part of the Legislature's comprehensive revision to the Louisiana law of matrimonial regimes in 1979. We believe the court of appeal erred in relying on Dill, Fuori and Robinson. Both Dill and Fuori relied on repealed article 2400 and Robinson's facts are distinguishable. Moreover, we must assume the Legislature intentionally used the plural "spouses" in Civil Code articles 2334 and 2329 while using the singular "spouse" in article 3523. Therefore, while we believe the court of appeal was correct in applying Louisiana's Conflict of Laws provisions, we hold that the court committed reversible error in finding the plaintiff's Louisiana-acquired movables to be community property.

DECREE
For the forgoing reasons, the decision of the court of appeal is REVERSED and the judgment of the district court, sustaining the exception of no cause of action is reinstated.
NOTES
[*] Retired Judge Robert L. Lobrano, assigned as Associate Justice Pro Tempore, participating in the decision.
[1] "[A] divorce shall be granted upon motion of a spouse when either spouse has filed a petition for divorce and upon proof that one hundred eighty days have elapsed since the service of the petition ... and that the spouses have lived separate and apart continuously for at least one hundred eighty days prior to the filing of the rule to show cause." LA. CIV.CODE ANN. art. 102 (West 2001).
[2] The wife's allegation of cruel treatment was based on the husband's extramarital affairs while he lived in Louisiana.
[3] 1979 La. Acts No. 711.
[4] See LA. CIV.CODE art. 2404 (repealed by 1979 La. Acts No. 710 § 1).
[5] See DIGEST OF CIVIL LAWS NOW IN FORCE IN THE TERRITORY OF ORLEANS, p. 336, art. 63 (1808).