ROBERT M. MURPHY, Judge.
[^Appellant, Najmi Shamim Khan (“Dr. Khan”), appeals the trial court’s April 30, 2013 judgment following a partition trial of the parties’ community property. The issues include whether the parties, who were married in their native India and became domiciled in Louisiana at different times, had a community property regime, whether the wife Nadia Shaheen (“Ms. Sha-heen”) was entitled to the return of two sets of jewelry, whether the community was entitled to reimbursement against Dr. Khan for funds provided to his family in India during his marriage, and whether Dr. Khan was entitled to reimbursement against Ms. Shaheen for her graduate MBA education at the University of New Orleans including her living expenses. For the reasons that follow, we affirm as amended.
FACTS AND PROCEDURAL HISTORY
On February 19, 2003, the parties were wed in a Muslim ceremony in Pat-ma, India, after which Dr. Khan, a medical doctor, became domiciled in Louisiana in advance of his wife. In January 2006, approximately two years and eleven months later, Ms. Shaheen, with the equivalent of a master’s degree in | ^computer programming in India, became domiciled in Louisiana to be with her husband.[1]
In 2007, Ms. Shaheen began her graduate studies at UNO and graduated with a *259 Masters Degree in Business Administration in 2009. She contends her husband would not permit her to work and forced her to obtain an MBA.
The parties separated in 2010.[2] On December 20, 2010, Ms. Shaheen filed for a La. C.C. art. 102 divorce. On December 9, 2011, the trial court granted the divorce.[3] Each party filed a sworn descriptive list. Dr. Khan filed a motion to traverse. On February 6, 2013, after hearing arguments on the Islamic marriage contract, the hearing officer recommended that Ms. Sha-heen’s list be used for the partition. He found that the parties did have community property, specifically finding that “at no time after moving to Louisiana from India did the parties execute a renunciation of community.” On February 8, 2013, appel-lee filed an amended sworn detailed descriptive list of her assets and liabilities. On March 18, 2013, appellant filed his “alternative” sworn descriptive list, to be considered if the trial court were to find that a community regime existed. Both parties filed objections to the hearing officer’s recommendations which were heard by the trial court on March 21, 2013.
On April 30, 2013, the trial court rendered a judgment and assigned detailed reasons declaring that a community property regime existed pursuant to La. C.C. art. 2334.[4] The trial court granted Ms. Shaheen’s reimbursement claim for the Lunreturned community funds provided to Dr. Khan’s family[5] and denied Dr. Khan’s reimbursement claim for payment of Ms. Shaheen’s graduate school tuition along with her living expenses. The trial court further ordered Dr. Khan to return jewelry. Dr. Khan’s appeal followed.
ASSIGNMENTS OF ERROR
1. The trial court erroneously determined that the parties entered into a community property regime.
2. The trial court erroneously determined that the donations to family members were not a usual and customary gift of value commensurate with the economic position of the parties.
3. The trial court erroneously determined that Ms. Shaheen did not concur in the donation made to family members.
4. The trial court erroneously denied Dr. Khan’s claim for the direct financial contribution to Ms. Sha-heen’s education and training.
5. The trial court erroneously ordered that Dr. Khan return jewelry belonging to Ms. Shaheen.
STANDARD OF REVIEW
An appellate court may not set aside a trial court’s finding of fact in the absence *260 of manifest error. Stobart v. State, through DOTD, 617 So.2d 880 (La.1993); Rosell v. ESCO, 549 So.2d 840 (La.1989). The Louisiana Supreme Court established a two-part test for the reversal of a fact-finder’s determinations:
1) The appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court; and
2) The appellate court must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous).
LAW AND DISCUSSION
In assignment of error number one, the appellant contends that the trial court erroneously determined that the parties entered into a community property regime. | ^Appellant contends the parties entered into a marriage contract that excluded the legal regime of acquets and gains, and thus the couple owned no community property.
Dr. Khan argues that in India, there is no regime of community property. The appellant also contends that the parties, both Muslim, entered into a marriage contract with a separate property regime. Dr. Khan contends that it is typical in Muslim marriages for the parties to enter a secular marriage contract. Dr. Khan relies on the “mahr” provision in the contract, which sets the price to be paid by the husband to the wife in the event of a divorce. Dr. Khan contends that it was the intent of the parties to hold property in their separate names and to pay Ms. Shaheen the specified sum in the mahr provision in the contract in the event of divorce.
Appellant cites cases involving the mahr provision. In Chaudry v. Chaudry, 159 N.J.Super. 566, 388 A.2d 1000, 1002 (1978), cert. denied, 78 N.J. 335, 395 A.2d 204 (1978), the appellate court gave comity to a Pakistani judgment of divorce. It held that the wife waived her rights to any future property obtained during the marriage by signing the marriage contract and by agreeing on the price of the mahr. Appellant further cites Aziz v. Aziz, 127 Misc.2d 1013, 488 N.Y.S.2d 123, 124 (N.Y.Sup.Ct.1985), in enforcing the mahr provision as a sum certain by applying ordinary contract law. In Zawahiri v. Alwattar, No. 07AP-925, 2008 WL 2698679, at p. 1 (Ohio Ct.App. July 10, 2008), the Ohio Court similarly applied ordinary contract law, finding that the contract was not void as Islamic or foreign, but rather was unenforceable as it was entered into under duress.
The appellee first objects to the admission of the translation of the marriage contract as inadmissible hearsay, as the expert/translator provided only an attached affidavit and did not qualify as required under La. C.E. art. 604. Appellee | ficontends that appellant relies on cases that are inapposite to the instant facts. None of the cited cases from New Jersey, New York, and Ohio were adjudicated in community property states or involved the division of community property. Appellee seeks straightforward application of the domicile test of La. C.C. art. 2334 which requires application of the legal regime of the community of acquets and gains to those “spouses domiciled in this state, regardless of their domicile at the time of marriage or the place of celebration of the marriage.”
The trial court found that the legal regime of acquets and gains applied to the parties pursuant to La. C.C. art. 2334. The trial court found no evidence that the parties ever sought to remove themselves from the community property regime according to La. C.C. art. 2328, nor did they file any document evidencing any wish to deviate from the regime via exclusion or *261 modification according to La. C.C. art. 2329.
We find Louisiana law applicable as to the distribution of movables acquired in Louisiana by Dr. Khan. La. C.C. art. 3523.[6] The issue of admissibility of the translation is of no moment. Even if the contract’s translation to English were properly admitted, it contains no provision renouncing the community property regime, as required under La. C.C. art. 2328, for couples domiciled here desiring to establish a separate property regime. It further contains no contractual exclusions or modifications to constitute a matrimonial agreement under La. C.C. art. 2328.[7] Additionally, there is no evidence of an authentic act or act under private signature duly acknowledged by the spouses stating that the document should be considered]^ matrimonial agreement. If the couple wished to exclude or modify the matrimonial regime, they could have done so without court approval “during the first year after moving into and acquiring a domicile in this state.” La. C.C. art. 2329.
We find that the trial court was not manifestly erroneous in its finding that the parties did not execute a matrimonial agreement terminating the community property regime. We conclude that on January 22, 2006 when Ms. Shaheen joined her husband in Louisiana and both spouses established domicile here, the parties were thereafter subject to the community property regime. La. C.C. art. 2334; Hand v. Hand, 01-0714 (La.11/28/01), 802 So.2d 560 (holding that when parties are married elsewhere, both spouses must be domiciled in Louisiana to create a community property regime).
Assignment of error number one lacks merit in part. Per the Louisiana Supreme Court’s holding in Hand, the community of acquets and gains was established when the second spouse became domiciled with her husband in Louisiana.
In assignment of error number two, appellant contends that the trial court erroneously determined that the donations to family members were not a usual and customary gift of a value commensurate with the economic position of the parties. Dr. Khan donated $54,850 from the checking account to his family over six years. With $15,000 returned by Dr. Khan’s brother, Ms. Shaheen contends the amount at issue is $39,850, of which no donations were made to her family members. La. C.C. art. 2349 provides:
The donation of community property to a third person requires the concurrence of the spouses, but a spouse acting alone may make a usual or customary gift of value commensurate with the economic position of the spouses at the time of the donation.
| sAppellant contends the donations to family members were a usual or customary gift of a value commensurate with the economic position of the spouses at the *262 time of the donation. He also argues that several of the checks were for Ms. Shaheen’s benefit while she was still in India, for a family member’s bone transplant, and for his mother to give to the poor. Appellant cites Schindler v. Schindler, 13-361 (La.App. 5 Cir. 12/19/13), 131 So.3d 439, in which this Court upheld that donations of $102,000 for a house and two cheeks totaling $9,000.00 to his caretaker, were of a usual and ’ customary amount given the economic position of the husband and wife, and thus the wife’s consent was not required. The Fifth Circuit stated that the amount of the donations “were quite in line with, and were in fact less than, the very generous donations that the Schindlers made to others who were not family members, and/or who provided or did not provide care to them.” Id. Appellant cites In re Succession of Wagner, 08-212 (La.App. 1 Cir. 8/8/08), 993 So.2d 709, 721, in which the First Circuit rejected the classification of the gift of $450,000 of gold coins to be a usual and customary gift, determining that the value was larger than the customary gifts to their children and grandchildren, more typically in the range of $10,000 to $20,000.
Appellant here contends that making monetary donations to his family members in India is a custom engrained in a communal Indian culture and upbringing and the trial court erred by not considering the particular cultural context of these gifts. Appellant notes that both parties were raised in India and only left India during their adult years. Appellant stresses that the gifts totaling less than $60,000 were small and spread out over the course of six years as compared to his annual income in the range of $165,000 to $200,000. He argues that the gifts are warranted without her approval. He further contends that his wife consented as she knew how much and to whom the money was going.
13Appellee seeks reimbursement of one-half of community funds donated to his family without her consent. She contends that his gifts to family members were not usual or customary gifts of a value commensurate with the economic position of the spouses at the time of the donation. In response to this contention that the funds were for her benefit while in India, she contends that she never received any such funds. As for the fact that she did fill in the blanks on some of the checks, she responds that she was forced to do so and did not approve.
Despite appellant’s argument supporting remittances to his mother and two brothers, as to any payments made after the community was established on January 22, 2006, we are unable to find that the trial court manifestly erred in finding the gifts exceeded what is usual or customary; Ms. Shaheen is therefore entitled to one-half of the community funds donated after January 22, 2006.
The trial court found that Ms. Shaheen was entitled to reimbursement of one-half of community funds sent to Dr. Khan’s family. The trial court rejected the argument that pursuant to La. C.C. art. 2349 he was permitted to make those gifts because they were usual or customary gifts of a value commensurate with their economic position. The trial court found that La. C.C. art. 2349 generally applies to birthday and wedding gifts rather than to the substantial cash payments here.
The trial court calculated the donated community assets at $39,850 and awarded Ms. Shaheen one-half, or $19,925. As to the amount of reimbursement, we find that the trial court manifestly erred in calculating the amount of reimbursement to the community in light of the holding in Hand, supra. The calculation of her share of the *263 community includes all amounts sent to his family after the establishment of the community on January 22, 2006. It is clear from the | inrecord that the following three payments were made to Dr. Khan’s oldest brother before January 22, 2006:
[[Image here]]
310 5/4/05 Zaidi Khan $1,500
340 6/4/05 Zaidi Khan 500
349 7/14/05 Zaidi Khan 20,000
TOTAL, Pre-1/22/06 $22,000
This $22,000 amount therefore represents Dr. Khan’s separate movable property. Dr. Khan’s 19 payments to his three family members totaling $32,850 after January 22, 2006,[8] the date the community was established, therefore constitute community assets, of which Ms. Shaheen’s one-half share is $16,425.
Assignment of error number two has merit, and we amend the trial court’s judgment accordingly. She is entitled to one-half of the community funds transferred between Dr. Khan and his family members after the community was established, or $16,425.
In assignment of error number three, the appellant contends that the trial court erroneously determined that Ms. Shaheen did not concur in the donation made to family members.
| nThe appellant contends that the donations had Ms. Shaheen’s concurrence under La. C.C. art. 2349. He relies on the physical evidence that she handwrote all the blank fields on the checks except for the signature line. He reiterates that arranged marriages and remittances, as here, are deeply rooted in Indian culture and that she willingly participated in the transfer of these funds.
Contrariwise, the appellee contends that she was forced to complete the checks. She notes that she is a victim of domestic physical and emotional abuse. She states that appellant hit her on numerous ocea- *264 sions and that she was unable to refuse his demands.
The trial court found that Ms. Shaheen did not concur in the donation of community funds to members of the Khan family.
On the record presented, including protection from abuse, we find that the trial court did not manifestly err in finding that Ms. Shaheen did not concur in the donation of community funds, with or without the arranged marriage or her consent on other issues.
Assignment of error number three lacks merit.
In assignment of error number four, the appellant contends that the trial court erroneously denied Dr. Khan’s claim for his direct financial contribution to Ms. Shaheen’s education and training, via UNO tuition expenses and living expenses. He claims that he contributed approximately $26,000 in tuition and $3,000 per month in living expenses.
Dr. Khan seeks reimbursement under La. C.C. art. 121 which provides the trial judge with discretion to award a sum for his financial contribution made during the marriage to the education of his spouse. La. C.C. art. 121 provides:
In a proceeding for divorce or thereafter, the court may award a party a sum for his financial contributions made during the marriage to education 112or training of his spouse that increased the spouse’s earning power, to the extent that the claimant did not benefit during the marriage from the increased earning power.
The sum awarded may be in addition to a sum for support and to property received in the partition of community property. (Emphasis added).
The appellant contends that the court should consider the husband’s financial contribution made to the wife’s education. He contends that he merely encouraged her to go to school and emphasizes the importance of higher education in Indian and Asian cultures. He argues that benefits from a higher degree accrue in different ways, even if your current job may not require you to have an advanced degree. He argues that Ms. Shaheen has never contributed back to the household.
Appellant cites McConathy v. McConathy, 632 So.2d 1200 (La.App. 2 Cir.1994), writ denied, 637 So.2d 1052 (La.1994), in which the Second Circuit found that the wife was entitled to an award under La. C.C. art. 121, when the husband returned to college to complete his degree and she worked full-time and provided the primary financial support for the family.
Appellee contends that the trial court correctly denied Dr. Khan’s claim for financial contribution to her education. Dr. Khan forced her to attend school by not permitting her to work. She contends she had no interest in continuing her studies as she had just received a Master’s Degree in computer programming in India. She notes that she is currently working as a business analyst, a position she contends does not require an MBA; she contends that this recent degree, which she was forced to obtain, does not benefit her.
The trial court found that “the court can’t at this point, discern any benefit that Ms. Shaheen has obtained from obtaining an MBA in that she is not working in a field which apparently requires an MBA nor has she obtained any employment 113for which an MBA would be necessary.” Here, Ms. Shaheen did not work for three years when she first came to Louisiana from India. It was during this time that she attended UNO to obtain her MBA.
The trial court has great discretion in determining whether the contributing spouse is entitled to reimbursement that *265 increases his spouse’s earning power. Barrow v. Barrow, 27,714 (La.App. 2 Cir. 2/28/96), 669 So.2d 622, writ denied, 96-1057, 96-1072 (La.6/21/96), 675 So.2d 1080, superseded by statute on other grounds, Talbot v. Talbot, 03-0814, p. 9 (La.12/12/03), 864 So.2d 590, 598. The Barrow Court considered three factors, all of which support the denial of Dr. Khan’s request for an Article 121 contribution: (1) his expectation of shared benefit when the contributions were made; (2) degree of detriment suffered by the claimant in making the contribution; and (3) magnitude of the benefit received by the other spouse. Id. Considering the argument that Dr. Khan originally did not want his wife to work, his own significant income, and her lack of benefit from having the additional degree, we find that the trial court was not manifestly erroneous in denying Dr. Khan’s claim for reimbursement.
Assignment of error number four lacks merit.
In assignment of error number five, the appellant contends that the trial court erroneously ordered that he return jewelry belonging to Ms. Shaheen as her separate property.
Appellant contends Ms. Shaheen has not offered any credible evidence to corroborate her allegations, including any description, value, or location of the jewelry, any entry into customs declarations, or any mention of the jewelry since moving to the United States in 2006. Appellant contends that she has not offered any support that Dr. Khan is in possession of this jewelry and that he should not be ordered to return something that has not been proven to be in his possession.
114The trial court ordered that the jewelry be returned to her as her separate property. Specifically the trial court ordered that two (2) wedding sets composed of a necklace, bracelet, ring and earrings be returned. We find that the trial court did not manifestly err in ordering Dr. Khan to return the jewelry to Ms. Shaheen as her separate property.
Assignment of error number five lacks merit.
DECREE
For the reasons above, we affirm the judgment of the trial court insofar as the denial of reimbursement of educational and living expenses and ordering the return of the two jewelry sets. We amend the amount Ms. Shaheen is entitled to from community funds from $19,925 to $16,425, reflecting her share of the transferred community property to his family members after the community was established.

AFFIRMED AS AMENDED.

. Ms. Shaheen testified that she became domiciled in Louisiana either on January 21 or 22, 2006.

. Initial filings include Ms. Shaheen's December 1, 2010 petition from domestic abuse, Dr. Khan’s answer that he wished to reconcile and that her allegations were an expression of Ms. Shaheen’s general dissatisfaction with the arranged marriage, and the TRO granted on January 11, 2011.

. Dr. Khan initially contested service of the La. C.C. art. 102 petition. This Court found that Dr. Khan waived the exception of insufficiency of service by entering into a January 31, 2011 Consent Judgment. Khan v. Shaheen, 11-770 (La.App. 5 Cir. 9/16/11) (unpublished writ disposition).

.La. C.C. art. 2334 provides:
The legal regime of community of acquets and gains applies to spouses [plural] domiciled in this state, regardless of their domicile at the time of marriage or the place of celebration of the marriage. (Emphasis added).

. The same April 30, 2013 judgment also deemed as community property funds in Chase Bank checking and savings accounts, Valic and United Life Insurance retirement accounts, UNO balance of account, and a 2002 Honda Accord. These issues are not the subject of this appeal.

. La. C.C. art. 3523 provides:
Except as otherwise provided in this Title [General Provisions of Conflict of Laws], the rights and obligations of spouses with regard to movables, wherever situated, acquired by either spouse during marriage are governed by the law of the domicile of the acquiring spouse at the time of acquisition.

. La. C.C. art. 2328 provides:
A matrimonial agreement is a contract establishing a regime of separation of property or modifying or terminating the legal regime. Spouses are free to establish by matrimonial agreement a regime of separation of property or modify the legal regime as provided by law. The provisions of the legal regime that have not been excluded or modified by agreement retain their force and effect.

. Dr. Khan's post-January 22, 2006 payments to his family members constituting community assets:
[[Image here]]
446 7/31/06 Zaidi Khan $6,400
477 12/17/06 Zaidi Khan 2,000
481 1/8/06 Forhan Khan 1,500
491 6/26/07 [Dr. Khan’s mother] 1,000
410 11/14/07 Craity Ana Kosy 2,700
670 5/29/08 Zaidi Khan 500
588 12/31/08 [Dr. Khan’s mother] 2,000
589 1/20/09 [Dr. Khan’s mother] 1,300
678 5/14/09 Zaidi Khan 600
592 9/10/09 Zaidi Khan 800
717 2/3/10 Zaidi Khan 1,500
719 4/19/10 Zaidi Khan 2,000
741 5/9/10 Zaidi Khan 3,000
748 6/26/10 Zaidi Khan 500
761 7/22/10 Zaidi Khan 325
765 8/25/10 Forhan Khan 1,500
766 8/25/10 Forhan Khan 3,750
767 8/25/10 Zaidi Khan 200
763 8/25/10 Zaidi Khan 1,275
TOTAL, Post-1/22/06 Transfer $32,850